## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Felicia Durgan, Evan Hatchell, Kasio Young, Cerise Roundtree, Thiago Costa, Bruce Proctor, Jr., Valerie Torres, Norman Lee, Jonathan Brooks, Lewis Cross, Jr., Tekara Peoples, Aaron Taylor, Christopher Tucker, Althea Kanteh, and Sakinah Batts,

on behalf of themselves and all others similarly situated,

     Plaintiffs,

v.

U-Haul International, Inc.,

     Defendant.

Case No.: 2:22-cv-01565-MTL

**AMENDED CLASS ACTION COMPLAINT**

DEMAND FOR JURY TRIAL

Plaintiffs Felicia Durgan, Evan Hatchell, Kasio Young, Cerise Roundtree, Thiago Costa, Bruce Proctor, Jr., Valerie Torres,  Norman Lee, Jonathan Brooks, Lewis Cross, Jr., Tekara Peoples, Aaron Taylor, Christopher Tucker, Althea Kanteh, and Sakinah Batts ("Plaintiffs") bring this Amended Class Action Complaint against U-Haul International, Inc. ("U-Haul" or "Defendant"), individually and on behalf of all others similarly situated ("Class Members"), and allege, upon personal knowledge as to their own actions and their counsels' investigations, and upon information and belief as to all other matters, as follows:

### I. INTRODUCTION

1.     Plaintiffs bring this class action against Defendant for its failure to properly secure and safeguard personal identifiable information ("PII")[1] for past and current

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or

customers of Defendant, including, but not limited to, name, date of birth, and driver's license number or state identification number.

2.      According to Defendant's website, Defendant is "is an American moving truck, trailer, and self-storage rental company, based in Phoenix, Arizona, that has been in operation since 1945."[2]

3.      Prior to and through April 5, 2022, Defendant obtained the PII of Plaintiffs and Class Members, including the PII of Plaintiff, who was a customer of Defendant, and stored that PII, unencrypted, in an Internet-accessible environment on Defendant's network.

4.      Defendant's Privacy Policy (the "Privacy Policy"), posted on its website, represents that it "[w]e use commercially reasonable physical, managerial, and technical safeguards to preserve the integrity and security of your Information and our systems. We cannot, however, ensure or warrant the security of any information you transmit to Us and you do so at your own risk. However, please note that this is not a guarantee that such information may not be accessed, disclosed, altered, or destroyed by breach of any of our physical, technical, or managerial safeguards."[3]

5.      On or before August 1, 2022, Defendant learned of a data security incident on its network (the "Data Breach").

---

identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

[2] *See* https://www.uhaul.com/About/History/ (last visited Sept. 12, 2022).

[3] Exhibit 1, *available at* https://www.uhaul.com/Legal/PrivacyPolicy/#Security (last visited Sept. 12, 2022).

6.      Defendant determined that, during the Data Breach, an unknown actor compromised two unique passwords for accessing Defendant's contract search tool and accessed the contracts of Defendant's past and current customers, including Plaintiffs and Class Members.

7.      On or around September 9, 2022, Defendant notified the U.S. Securities and Exchange Commission ("SEC") of the Data Breach.

8.      On or around September 9, 2022, Defendant began notifying Plaintiffs and Class Members of the Data Breach.

9.      By obtaining, collecting, using, and deriving a benefit from the PII of Plaintiffs and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.  Defendant admits that the unencrypted PII accessed by an unauthorized actor included name, date of birth, and driver's license number or state identification number.

10.      The exposed PII of Plaintiffs and Class Members can be sold on the dark web.  Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals.  Plaintiffs and Class Members now face a lifetime risk of (i) identity theft, which is heightened here by the loss of driver's license numbers or state identification number, and (ii) the sharing and detrimental use of their sensitive information.

11.      The PII was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the PII of Plaintiffs and Class Members.  In addition to Defendant's failure to prevent the Data Breach, Defendant waited several months after the Data Breach occurred to report it to the SEC and affected individuals.  Defendant has

also purposefully maintained secret the specific vulnerabilities and root causes of the breach and has not informed Plaintiffs and Class Members of that information.

12.     As a result of this delayed response, Plaintiffs and Class Members had no idea their PII had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm, including the sharing and detrimental use of their sensitive information. The risk will remain for their respective lifetimes.

13.     Plaintiffs bring this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiffs and Class Members; (ii) warn Plaintiffs and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates federal and state statutes.

14.     Plaintiffs and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, (iv) the disclosure of their private information, and (v) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as

4

Defendant fails to undertake appropriate and adequate measures to protect the PII.

15.     Defendant disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that the PII of Plaintiffs and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As the result, the PII of Plaintiffs and Class Members was compromised through disclosure to an unauthorized third party. Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II. PARTIES

16.     Plaintiff Felicia Durgan is a citizen of Virginia residing in Stafford, Virginia.

17.     Plaintiff Evan Hatchell is a citizen of Florida residing in Mesa, Arizona.

18.     Plaintiff Kasio Young is a citizen of South Carolina residing in Florence, South Carolina.

19.     Plaintiff Cerise Roundtree is a citizen of Arizona residing in Tempe, Arizona.

20.     Plaintiff Thiago Costa is a citizen of Florida residing in Tampa, Florida.

21.     Plaintiff Bruce Proctor, Jr. is a citizen of Pennsylvania residing in Pittsburgh, Pennsylvania.

22.     Plaintiff Valerie Torres is a citizen of Florida residing in Port Orange, Florida.

23.     Plaintiff Norman Lee is a citizen of North Carolina residing in Caldwell County, North Carolina.

24.     Plaintiff Jonathan Brooks is a citizen of California residing in Redding, California.

25.     Plaintiff Lewis Cross, Jr. is a citizen of Pennsylvania residing in Pittsburgh, Pennsylvania.

26.     Plaintiff Tekara Peoples is a citizen of California residing in Torrance, California.

27.     Plaintiff Aaron Taylor is a citizen of Kentucky residing in Lexington, Kentucky.

28.     Plaintiff Christopher Tucker is a citizen of Missouri residing in Joplin, Missouri.

29.     Plaintiff Althea Kanteh is a citizen of New Jersey residing in Irvington, New Jersey.

30.     Plaintiff Sakinah Batts is a citizen of North Carolina residing in Rocky Mount, North Carolina.

31.     Defendant is a Nevada corporation with a principal place of business in Phoenix, Arizona.

32.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiffs.  Plaintiffs will seek leave of court to amend this

complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

33.    All of Plaintiffs' claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

### III. JURISDICTION AND VENUE

34.    This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member, including Plaintiffs other than Plaintiff Cerise Roundtree, is a citizen of a state different from Defendant to establish minimal diversity.

35.    Defendant is a citizen of Nevada and Arizona because it is a corporation formed under Nevada law and its principal place of business is in Phoenix, Arizona.

36.    The District of Arizona has personal jurisdiction over Defendant because it conducts substantial business in Arizona and this District.

37.    Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant operates in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

### IV. FACTUAL ALLEGATIONS

***Background***

38.    Plaintiffs and Class Members, who are past and current customers of Defendant, provided and entrusted Defendant with sensitive and confidential information,

including name, date of birth, and driver's license number or state identification number.

39.     Plaintiffs and Class Members relied on this sophisticated Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.   Plaintiffs and Class Members demand security to safeguard their PII.

40.     Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiffs and Class Members from involuntary disclosure to third parties.

### *The Data Breach*

41.     On or about September 9, 2022, Defendant sent Plaintiffs and Class Members a *Notice of Recent Security Incident*.   Defendant informed Plaintiffs and other Class Members that:

> **What Happened?**
>
> We detected a compromise of two unique passwords that were used to access a customer contract search tool that allows access to rental contracts for U-Haul customers. The search tool cannot access payment card information; no credit card information was accessed or acquired. Upon identifying the compromised passwords, we promptly changed the passwords to prevent any further unauthorized access to the search tool and started an investigation. Cybersecurity experts were engaged to identify the contracts and data that were involved. The investigation determined an unauthorized person accessed the customer contract search tool and some customer contracts. None of our financial, payment processing or U-Haul email systems were involved; the access was limited to the customer contract search tool.
>
> **What Information Was Involved?**
>
> On August 1, 2022, our investigation determined some rental contracts were accessed between November 5, 2021, and April

5, 2022. After an in-depth analysis, our investigation determined on September 7, 2022, the accessed information includes your name and driver's license or state identification number.

**What We Are Doing?**

The safety and trust of our customers, including the protection of personal information, is a top priority for U-Haul Company and we take that responsibility very seriously. While the information accessed in this incident did not include payment card information, we fully understand this is an inconvenience to you. We sincerely apologize for that. Please know we are working diligently to further augment our security measures to guard against such incidents and implementing additional security safeguards and controls on the search tool.

42.     Defendant also filed a notice with the SEC advising that the PII impacted included name, date of birth, and driver's license number.[4]

43.     Defendant admitted in the *Notice of Recent Security Incident* and the SEC filing that an unauthorized actor accessed sensitive information about Plaintiffs and Class Members, including name, date of birth, and driver's license number or state identification number.

44.     In response to the Data Breach, Defendant claims that cybersecurity experts are "are implementing additional security safeguards and controls to prevent further such incidents."[5] However, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure a breach does not occur again have not been shared with regulators or Plaintiffs and Class Members, who retain a vested

---

[4] Exhibit 2.
[5] *Id.*

interest in ensuring that their information remains protected.

45.     The unencrypted PII of Plaintiffs and Class Members may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiffs and Class Members.  Unauthorized individuals can easily access the PII of Plaintiffs and Class Members.

46.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiffs and Class Members, causing the exposure of PII for Plaintiffs and Class Members.

47.     Because Defendant had a duty to protect Plaintiff's and Class Members' PII, Defendant should have accessed readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information.

48.     In the years immediately preceding the Data Breach, Defendant knew or should have known that Defendant's computer systems were a target for cybersecurity attacks because warnings were readily available and accessible via the internet.

49.     In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the

transportation sector."[6]

50.     In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "*[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies*.  They breach networks, use specialized tools to maximize damage, *leak corporate information on dark web portals*, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[7]

51.     In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "*[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data* if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[8]

52.     This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) cybercriminals were targeting big companies such as Defendant, (ii) cybercriminals were ferociously aggressive in their

---

[6] FBI, High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations (Oct. 2, 2019) (emphasis added), *available at* https://www.ic3.gov/Media/Y2019/PSA191002 (last visited Jan. 25, 2022).

[7] ZDNet, Ransomware mentioned in 1,000+ SEC filings over the past year (Apr. 30, 2020) (emphasis added), *available at* https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last visited Jan. 25, 2022).

[8] U.S.   CISA,   Ransomware   Guide  –  September   2020,   *available   at* https://www.cisa.gov/sites/default/files/publications/CISA_MS ISAC_Ransomware%20Guide_S508C_.pdf (last visited Jan. 25, 2022).

pursuit of big companies such as Defendant, (iii) cybercriminals were leaking corporate information on dark web portals, and (iv) cybercriminals' tactics included threatening to release stolen data.

53.    In light of the information readily available and accessible on the internet before the Data Breach, Defendant, having elected to store the unencrypted PII of Plaintiffs and Class Members in an Internet-accessible environment, had reason to be on guard for the exfiltration of the PII and Defendant's type of business had cause to be particularly on guard against such an attack.

54.    Prior to the Data Breach, Defendant acknowledged, in its parent company's annual report filed with the SEC in July 2021, as follows:

> Our information systems are largely Internet-based, including our point-of-sale reservation system, payment processing and telephone systems. While our reliance on this technology lowers our cost of
> providing service and expands our abilities to better serve customers, it exposes us to various risks including natural and man-made disasters, terrorist attacks and cyber-attacks. ***We have put into place extensive security protocols, backup systems and alternative procedures to mitigate these risks.*** However, disruptions or breaches, detected or undetected by us, for any period of time in any portion of these systems could adversely affect our results of operations and financial condition and inflict reputational damage.
>
> In addition, the provision of service to our customers and ***the operation of our networks and systems involve the storage and transmission of proprietary information and sensitive or confidential data, including personal information of customers***, system members and others. Our information technology systems may be susceptible to computer viruses, attacks by computer hackers, malicious insiders, or catastrophic events. Hackers, acting individually or in coordinated groups, may also launch distributed denial of

service attacks or ransom or other coordinated attacks that may cause service outages or other interruptions in our business and access to our data. ***In addition, breaches in security could expose us, our customers, or the individuals affected, to a risk of loss or misuse of proprietary information and sensitive or confidential data***. The techniques used to obtain unauthorized access, disable or degrade service or sabotage systems change frequently, may be difficult to detect for a long time and often are not recognized until launched against a target. As a result, we may be unable to anticipate these techniques or to implement adequate preventative measures.

Any of these occurrences could result in disruptions in our operations, the loss of existing or potential customers, damage to our brand and reputation, and litigation and potential liability for the Company. In addition, the cost and operational consequences of implementing further data or system protection measures could be significant and our efforts to deter, identify, mitigate and/or eliminate any security breaches may not be successful.[9]

55.     Prior to the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack.

56.     Prior to the Data Breach, Defendant knew or should have known that it should have encrypted the driver's license numbers and other sensitive data elements within the PII to protect against their publication and misuse in the event of a cyberattack.

***Defendant Acquires, Collects, and Stores the PII of Plaintiffs and Class Members.***

57.     As a condition of being a past or current customers of Defendant, Defendant required that Plaintiffs and Class Members entrust Defendant with highly confidential PII.

---

[9] AMERCO 2021 Annual Report, *available at* https://www.amerco.com/reports.aspx (last visited Sept. 12, 2022).  AMERCO is the parent company of Defendant.

58.     Defendant acquired, collected, and stored the PII of Plaintiffs and Class Members.

59.     By obtaining, collecting, and storing the PII of Plaintiffs and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII from disclosure.

60.     Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

### *Securing PII and Preventing Breaches*

61.     Defendant could have prevented this Data Breach by properly securing and encrypting the folders, files, and or data fields containing the PII of Plaintiffs and Class Members.  Alternatively, Defendant could have destroyed the data it no longer had a reasonable need to maintain or only stored data in an Internet-accessible environment when there was a reasonable need to do so.

62.     Defendant's negligence in safeguarding the PII of Plaintiffs and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

63.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiffs and Class Members from being compromised.

64.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud

committed or attempted using the identifying information of another person without authority."[10] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[11]

65.     The ramifications of Defendant's failure to keep secure the PII of Plaintiffs and Class Members are long lasting and severe. Once PII is stolen, particularly driver's license numbers, fraudulent use of that information and damage to victims may continue for years.

### *Value of Personal Identifiable Information*

66.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[12] Experian reports

---

[10] 17 C.F.R. § 248.201 (2013).

[11] *Id.*

[12] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Jan. 26, 2022).

that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[13] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[14]

67.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts.  The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

68.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[15]

69.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

70.     The fraudulent activity resulting from the Data Breach may not come to light for years.

---

[13] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*:  https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/  (last accessed Jan. 26, 2022).

[14] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed Dec. 29, 2020).

[15] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Jan. 26, 2022).

71.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[16]

72.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiffs and Class Members, including driver's license numbers, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of a breach.

73.     Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiffs and Class Members incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

74.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data contained in Defendant's contract search tool, amounting to potentially millions of individuals' detailed, personal information and, thus, the significant

---

[16] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last accessed Mar. 15, 2021).

number of individuals who would be harmed by the exposure of the unencrypted data.

75.     To date, Defendant has offered Plaintiffs and Class Members only one year of credit monitoring and identity theft detection through Equifax. The offered service is inadequate to protect Plaintiffs and Class Members from the threats they face for years to come, particularly in light of the PII at issue here.

76.     The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiffs and Class Members.

### *Plaintiff Durgan's Experience*

77.     Prior to the Data Breach, Plaintiff Durgan was a customer of Defendant.  As a condition of being a customer of Defendant, Defendant required that she provide and entrust her PII.

78.     Plaintiff Durgan received Defendant's *Notice of Recent Security Incident*, dated September 9, 2022, on or about that date.  The notice stated that Plaintiff Durgan's name and driver's license number or state identification number were accessed by an unauthorized actor.

79.     As a result of the Data Breach, Plaintiff Durgan's sensitive information was acquired by an unauthorized actor.  The confidentiality of Plaintiff Durgan's sensitive information has been irreparably harmed.  For the rest of her life, Plaintiff Durgan will have to worry about when and how her sensitive information may be shared or used to her detriment.

80.     As a result of the Data Breach notice, Plaintiff Durgan spent time dealing

with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Recent Security Incident* and self-monitoring her accounts. This time has been lost forever and cannot be recaptured.

81.     Additionally, Plaintiff Durgan is very careful about sharing her sensitive PII. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

82.     Plaintiff Durgan stores any documents containing her sensitive PII in a safe and secure location or destroys the documents. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

83.     Plaintiff Durgan suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

84.     Plaintiff Durgan has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII, especially her driver's license number, being placed in the hands of unauthorized third parties and possibly criminals.

85.     Plaintiff Durgan has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### *Plaintiff Hatchell's Experience*

86.     Prior to the Data Breach, Plaintiff Hatchell was a customer of Defendant.  As a condition of being a customer of Defendant, Defendant required that he provide and

entrust his PII.

87.     Plaintiff Hatchell received Defendant's *Notice of Recent Security Incident*, dated September 10, 2022, on or about that date.  The notice stated that Plaintiff Hatchell's name and driver's license number or state identification number were accessed by an unauthorized actor.

88.     As a result of the Data Breach, Plaintiff Hatchell's sensitive information was acquired by an unauthorized actor.  The confidentiality of Plaintiff Hatchell's sensitive information has been irreparably harmed.  For the rest of his life, Plaintiff Hatchell will have to worry about when and how his sensitive information may be shared or used to his detriment.

89.     As a result of the Data Breach notice, Plaintiff Hatchell spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Recent Security Incident* and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

90.     Additionally, Plaintiff Hatchell is very careful about sharing his sensitive PII. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

91.     Plaintiff Hatchell stores any documents containing his sensitive PII in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

92.     Plaintiff Hatchell suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for

the loss of his privacy.

93.     Plaintiff Hatchell has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his driver's license number, being placed in the hands of unauthorized third parties and possibly criminals.

94.     Plaintiff Hatchell has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### *Plaintiff Young's Experience*

95.     Prior to the Data Breach, Plaintiff Young was a customer of Defendant.  As a condition of being a customer of Defendant, Defendant required that she provide and entrust her PII.

96.     Plaintiff Young received Defendant's *Notice of Recent Security Incident*, dated September 12, 2022, on or about that date.  The notice stated that Plaintiff Young's name and driver's license number or state identification number were accessed by an unauthorized actor.

97.     As a result of the Data Breach, Plaintiff Young's sensitive information was acquired by an unauthorized actor.  The confidentiality of Plaintiff Young's sensitive information has been irreparably harmed.  For the rest of her life, Plaintiff Young will have to worry about when and how her sensitive information may be shared or used to her detriment.

98.     As a result of the Data Breach notice, Plaintiff Young spent time dealing with

the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Recent Security Incident* and self-monitoring her accounts. This time has been lost forever and cannot be recaptured.

99.     Additionally, Plaintiff Young is very careful about sharing her sensitive PII. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

100.    Plaintiff Young stores any documents containing her sensitive PII in a safe and secure location or destroys the documents. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

101.    Plaintiff Young suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

102.    Plaintiff Young has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII, especially her driver's license number, being placed in the hands of unauthorized third parties and possibly criminals.

103.    Plaintiff Young has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### *Plaintiff Roundtree's Experience*

104.    Prior to the Data Breach, Plaintiff Roundtree was a customer of Defendant. As a condition of being a customer of Defendant, Defendant required that she provide and

entrust her PII.

105.    Plaintiff Roundtree received Defendant's *Notice of Recent Security Incident*, dated September 11, 2022, on or about that date.   The notice stated that Plaintiff Roundtree's name and driver's license number or state identification number were accessed by an unauthorized actor.

106.    As a result of the Data Breach, Plaintiff Roundtree's sensitive information was acquired by an unauthorized actor.   The confidentiality of Plaintiff Roundtree's sensitive information has been irreparably harmed.   For the rest of her life, Plaintiff Roundtree will have to worry about when and how her sensitive information may be shared or used to her detriment.

107.    As a result of the Data Breach notice, Plaintiff Roundtree spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Recent Security Incident* and self-monitoring her accounts. This time has been lost forever and cannot be recaptured.

108.    Additionally, Plaintiff Roundtree is very careful about sharing her sensitive PII. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

109.    Plaintiff Roundtree stores any documents containing her sensitive PII in a safe and secure location or destroys the documents. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

110.    Plaintiff Roundtree suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for

the loss of her privacy.

111.    Plaintiff Roundtree has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII, especially her driver's license number, being placed in the hands of unauthorized third parties and possibly criminals.

112.    Plaintiff Roundtree has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### Plaintiff Costa's Experience

113.    Prior to the Data Breach, Plaintiff Costa was a customer of Defendant.  As a condition of being a customer of Defendant, Defendant required that he provide and entrust his PII.

114.    Plaintiff Costa received Defendant's *Notice of Recent Security Incident*, dated September 10, 2022, on or about that date.  The notice stated that Plaintiff Costa's name and driver's license number or state identification number were accessed by an unauthorized actor.

115.    As a result of the Data Breach, Plaintiff Costa's sensitive information was acquired by an unauthorized actor.  The confidentiality of Plaintiff Costa's sensitive information has been irreparably harmed.  For the rest of his life, Plaintiff Costa will have to worry about when and how his sensitive information may be shared or used to his detriment.

116.    As a result of the Data Breach notice, Plaintiff Costa spent time dealing with

the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Recent Security Incident* and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

117.    Additionally, Plaintiff Costa is very careful about sharing his sensitive PII. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

118.    Plaintiff Costa stores any documents containing his sensitive PII in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

119.    Plaintiff Costa suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

120.    Plaintiff Costa has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his driver's license number, being placed in the hands of unauthorized third parties and possibly criminals.

121.    Plaintiff Costa has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### *Plaintiff Proctor's Experience*

122.    Prior to the Data Breach, Plaintiff Proctor was a customer of Defendant.  As a condition of being a customer of Defendant, Defendant required that he provide and

entrust his PII.

123.    Plaintiff Proctor received Defendant's *Notice of Recent Security Incident*, dated September 11, 2022, on or about that date.  The notice stated that Plaintiff Proctor's name and driver's license number or state identification number were accessed by an unauthorized actor.

124.    As a result of the Data Breach, Plaintiff Proctor's sensitive information was acquired by an unauthorized actor.  The confidentiality of Plaintiff Proctor's sensitive information has been irreparably harmed.  For the rest of his life, Plaintiff Proctor will have to worry about when and how his sensitive information may be shared or used to his detriment.

125.    As a result of the Data Breach notice, Plaintiff Proctor spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Recent Security Incident* and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

126.    Additionally, Plaintiff Proctor is very careful about sharing his sensitive PII. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

127.    Plaintiff Proctor stores any documents containing his sensitive PII in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

128.    Plaintiff Proctor suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for

the loss of his privacy.

129.    Plaintiff Proctor has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his driver's license number, being placed in the hands of unauthorized third parties and possibly criminals.

130.    Plaintiff Proctor has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### Plaintiff Torres's Experience

131.    Prior to the Data Breach, Plaintiff Torres was a customer of Defendant.  As a condition of being a customer of Defendant, Defendant required that she provide and entrust her PII.

132.    Plaintiff Torres received Defendant's *Notice of Recent Security Incident*, dated September 12, 2022, on or about that date.  The notice stated that Plaintiff Torres's name and driver's license number or state identification number were accessed by an unauthorized actor.

133.    As a result of the Data Breach, Plaintiff Torres's sensitive information was acquired by an unauthorized actor.  The confidentiality of Plaintiff Torres's sensitive information has been irreparably harmed.  For the rest of her life, Plaintiff Torres will have to worry about when and how her sensitive information may be shared or used to her detriment.

134.    As a result of the Data Breach notice, Plaintiff Torres spent time dealing with

27

the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Recent Security Incident* and self-monitoring her accounts. This time has been lost forever and cannot be recaptured.

135.    Additionally, Plaintiff Torres is very careful about sharing her sensitive PII. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

136.    Plaintiff Torres stores any documents containing her sensitive PII in a safe and secure location or destroys the documents. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

137.    Plaintiff Torres suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

138.    Plaintiff Torres has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII, especially her driver's license number, being placed in the hands of unauthorized third parties and possibly criminals.

139.    Plaintiff Torres has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### Plaintiff Lee's Experience

140.    Prior to the Data Breach, Plaintiff Lee was a customer of Defendant.  As a condition of being a customer of Defendant, Defendant required that he provide and entrust

his PII.

141.    Plaintiff Lee received Defendant's *Notice of Recent Security Incident*, dated September 19, 2022, on or about that date.  The notice stated that Plaintiff Lee's name and driver's license number or state identification number were accessed by an unauthorized actor.

142.    As a result of the Data Breach, Plaintiff Lee's sensitive information was acquired by an unauthorized actor.   The confidentiality of Plaintiff Lee's sensitive information has been irreparably harmed.  For the rest of his life, Plaintiff Lee will have to worry about when and how his sensitive information may be shared or used to his detriment.

143.    As a result of the Data Breach notice, Plaintiff Lee spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Recent Security Incident* and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

144.    Additionally, Plaintiff Lee is very careful about sharing his sensitive PII. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

145.    Plaintiff Lee stores any documents containing his sensitive PII in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

146.    Plaintiff Lee suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his

privacy.

147.    Plaintiff Lee has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his driver's license number, being placed in the hands of unauthorized third parties and possibly criminals.

148.    Plaintiff Lee has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### *Plaintiff Brooks's Experience*

149.    Prior to the Data Breach, Plaintiff Brooks was a customer of Defendant.  As a condition of being a customer of Defendant, Defendant required that he provide and entrust his PII.

150.    Plaintiff Brooks received Defendant's *Notice of Recent Security Incident*, dated September 19, 2022, on or about that date.  The notice stated that Plaintiff Brooks's name and driver's license number or state identification number were accessed by an unauthorized actor.

151.    As a result of the Data Breach, Plaintiff Brooks's sensitive information was acquired by an unauthorized actor.  The confidentiality of Plaintiff Brooks's sensitive information has been irreparably harmed.  For the rest of his life, Plaintiff Brooks will have to worry about when and how his sensitive information may be shared or used to his detriment.

152.    As a result of the Data Breach notice, Plaintiff Brooks spent time dealing

with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Recent Security Incident* and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

153.    Additionally, Plaintiff Brooks is very careful about sharing his sensitive PII. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

154.    Plaintiff Brooks stores any documents containing his sensitive PII in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

155.    Plaintiff Brooks suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

156.    Plaintiff Brooks has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his driver's license number, being placed in the hands of unauthorized third parties and possibly criminals.

157.    Plaintiff Brooks has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### Plaintiff Cross's Experience

158.    Prior to the Data Breach, Plaintiff Cross was a customer of Defendant.  As a condition of being a customer of Defendant, Defendant required that he provide and entrust

his PII.

159.    Plaintiff Cross received Defendant's *Notice of Recent Security Incident*, dated September 9, 2022, on or about that date.  The notice stated that Plaintiff Cross's name and driver's license number or state identification number were accessed by an unauthorized actor.

160.    As a result of the Data Breach, Plaintiff Cross's sensitive information was acquired by an unauthorized actor.  The confidentiality of Plaintiff Cross's sensitive information has been irreparably harmed.  For the rest of his life, Plaintiff Cross will have to worry about when and how his sensitive information may be shared or used to his detriment.

161.    As a result of the Data Breach notice, Plaintiff Cross spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Recent Security Incident* and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

162.    Additionally, Plaintiff Cross is very careful about sharing his sensitive PII. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

163.    Plaintiff Cross stores any documents containing his sensitive PII in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

164.    Plaintiff Cross suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for

the loss of his privacy.

165.    Plaintiff Cross has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his driver's license number, being placed in the hands of unauthorized third parties and possibly criminals.

166.    Plaintiff Cross has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### *Plaintiff Peoples's Experience*

167.    Prior to the Data Breach, Plaintiff Peoples was a customer of Defendant.  As a condition of being a customer of Defendant, Defendant required that she provide and entrust her PII.

168.    Plaintiff Peoples received Defendant's *Notice of Recent Security Incident*, dated September 19, 2022, on or about that date.  The notice stated that Plaintiff Peoples's name and driver's license number or state identification number were accessed by an unauthorized actor.

169.    As a result of the Data Breach, Plaintiff Peoples's sensitive information was acquired by an unauthorized actor.  The confidentiality of Plaintiff Peoples's sensitive information has been irreparably harmed.  For the rest of her life, Plaintiff Peoples will have to worry about when and how her sensitive information may be shared or used to her detriment.

170.    As a result of the Data Breach notice, Plaintiff Peoples spent time dealing

with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Recent Security Incident* and self-monitoring her accounts. This time has been lost forever and cannot be recaptured.

171.    Additionally, Plaintiff Peoples is very careful about sharing her sensitive PII. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

172.    Plaintiff Peoples stores any documents containing her sensitive PII in a safe and secure location or destroys the documents. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

173.    Plaintiff Peoples suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

174.    Plaintiff Peoples has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII, especially her driver's license number, being placed in the hands of unauthorized third parties and possibly criminals.

175.    Plaintiff Peoples has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### *Plaintiff Taylor's Experience*

176.    Prior to the Data Breach, Plaintiff Taylor was a customer of Defendant.  As a condition of being a customer of Defendant, Defendant required that he provide and

entrust his PII.

177.    Plaintiff Taylor received Defendant's *Notice of Recent Security Incident*, dated September 19, 2022, on or about that date.  The notice stated that Plaintiff Taylor's name and driver's license number or state identification number were accessed by an unauthorized actor.

178.    As a result of the Data Breach, Plaintiff Taylor's sensitive information was acquired by an unauthorized actor.  The confidentiality of Plaintiff Taylor's sensitive information has been irreparably harmed.  For the rest of his life, Plaintiff Taylor will have to worry about when and how his sensitive information may be shared or used to his detriment.

179.    As a result of the Data Breach notice, Plaintiff Taylor spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Recent Security Incident* and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

180.    Additionally, Plaintiff Taylor is very careful about sharing his sensitive PII. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

181.    Plaintiff Taylor stores any documents containing his sensitive PII in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

182.    Plaintiff Taylor suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for

the loss of his privacy.

183.    Plaintiff Taylor has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his driver's license number, being placed in the hands of unauthorized third parties and possibly criminals.

184.    Plaintiff Taylor has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### Plaintiff Tucker's Experience

185.    Prior to the Data Breach, Plaintiff Tucker was a customer of Defendant.  As a condition of being a customer of Defendant, Defendant required that he provide and entrust his PII.

186.    Plaintiff Tucker received Defendant's *Notice of Recent Security Incident*, dated September 19, 2022, on or about that date.  The notice stated that Plaintiff Tucker's name and driver's license number or state identification number were accessed by an unauthorized actor.

187.    As a result of the Data Breach, Plaintiff Tucker's sensitive information was acquired by an unauthorized actor.  The confidentiality of Plaintiff Tucker's sensitive information has been irreparably harmed.  For the rest of his life, Plaintiff Tucker will have to worry about when and how his sensitive information may be shared or used to his detriment.

188.    As a result of the Data Breach notice, Plaintiff Tucker spent time dealing

with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Recent Security Incident* and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

189.    Additionally, Plaintiff Tucker is very careful about sharing his sensitive PII. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

190.    Plaintiff Tucker stores any documents containing his sensitive PII in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

191.    Plaintiff Tucker suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

192.    Plaintiff Tucker has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his driver's license number, being placed in the hands of unauthorized third parties and possibly criminals.

193.    Plaintiff Tucker has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### Plaintiff Kanteh's Experience

194.    Prior to the Data Breach, Plaintiff Kanteh was a customer of Defendant.  As a condition of being a customer of Defendant, Defendant required that she provide and

entrust her PII.

195.    Plaintiff Kanteh received Defendant's *Notice of Recent Security Incident*, dated September 19, 2022, on or about that date.  The notice stated that Plaintiff Kanteh's name and driver's license number or state identification number were accessed by an unauthorized actor.

196.    As a result of the Data Breach, Plaintiff Kanteh's sensitive information was acquired by an unauthorized actor.  The confidentiality of Plaintiff Kanteh's sensitive information has been irreparably harmed.  For the rest of her life, Plaintiff Kanteh will have to worry about when and how her sensitive information may be shared or used to her detriment.

197.    As a result of the Data Breach notice, Plaintiff Kanteh spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Recent Security Incident* and self-monitoring her accounts. This time has been lost forever and cannot be recaptured.

198.    Additionally, Plaintiff Kanteh is very careful about sharing her sensitive PII. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

199.    Plaintiff Kanteh stores any documents containing her sensitive PII in a safe and secure location or destroys the documents. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

200.    Plaintiff Kanteh suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for

the loss of her privacy.

201.    Plaintiff Kanteh has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII, especially her driver's license number, being placed in the hands of unauthorized third parties and possibly criminals.

202.    Plaintiff Kanteh has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### *Plaintiff Batts's Experience*

203.    Prior to the Data Breach, Plaintiff Batts was a customer of Defendant.  As a condition of being a customer of Defendant, Defendant required that she provide and entrust her PII.

204.    Plaintiff Batts received Defendant's *Notice of Recent Security Incident*, dated September 19, 2022, on or about that date.  The notice stated that Plaintiff Batts's name and driver's license number or state identification number were accessed by an unauthorized actor.

205.    As a result of the Data Breach, Plaintiff Batts's sensitive information was acquired by an unauthorized actor.  The confidentiality of Plaintiff Batts's sensitive information has been irreparably harmed.  For the rest of her life, Plaintiff Batts will have to worry about when and how her sensitive information may be shared or used to her detriment.

206.    As a result of the Data Breach notice, Plaintiff Batts spent time dealing with

the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Recent Security Incident* and self-monitoring her accounts. This time has been lost forever and cannot be recaptured.

207.   Additionally, Plaintiff Batts is very careful about sharing her sensitive PII. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

208.   Plaintiff Batts stores any documents containing her sensitive PII in a safe and secure location or destroys the documents. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

209.   Plaintiff Batts suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

210.   Plaintiff Batts has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII, especially her driver's license number, being placed in the hands of unauthorized third parties and possibly criminals.

211.   Plaintiff Batts has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## V. CLASS ALLEGATIONS

212.   Plaintiffs bring this nationwide class action on behalf of themselves and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of

the Federal Rules of Civil Procedure.

213.    The Nationwide Class that Plaintiffs seek to represent is defined as follows:

> All individuals whose PII was compromised in the data breach
> that is the subject of the *Notice of Recent Security Incident* that
> Defendant sent to Plaintiffs and Class Members on or around
> September 9, 2022 (the "Nationwide Class").

214.    The California Subclass that Plaintiffs Peoples and Brooks seek to represent
is defined as follows:

> All individuals who resided in California at any time during,
> and whose PII was compromised in, the data breach that is the
> subject of the Notice of Recent Security Incident that
> Defendant sent to Plaintiffs and Class Members on or around
> September 9, 2022 (the "California Subclass").

215.    Excluded from the Class are the following individuals and/or entities:
Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any
entity in which Defendant has a controlling interest; all individuals who make a timely
election to be excluded from this proceeding using the correct protocol for opting out; any
and all federal, state or local governments, including but not limited to their departments,
agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and
all judges assigned to hear any aspect of this litigation, as well as their immediate family
members.

216.    Plaintiffs reserve the right to modify or amend the definition of the proposed
classes before the Court determines whether certification is appropriate.

217.    <u>Numerosity</u>, Fed R. Civ. P. 23(a)(1): The Nationwide Class (the "Class") is
so numerous that joinder of all members is impracticable. Defendant has identified

41

numerous individuals whose PII was compromised in the Data Breach, and the Class Members are apparently identifiable within Defendant's records.

218.   Commonality, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Class Members and predominate over any questions affecting only individual Class Members. These include:

a.   Whether and to what extent Defendant had a duty to protect the PII of Plaintiffs and Class Members;

b.   Whether Defendant had duties not to disclose the PII of Plaintiffs and Class Members to unauthorized third parties;

c.   Whether Defendant had duties not to use the PII of Plaintiffs and Class Members for non-business purposes;

d.   Whether Defendant failed to adequately safeguard the PII of Plaintiffs and Class Members;

e.   When Defendant actually learned of the Data Breach;

f.   Whether Defendant adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII had been compromised;

g.   Whether Defendant violated the law by failing to promptly notify Plaintiffs and Class Members that their PII had been compromised;

h.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.   Whether Defendant adequately addressed and fixed the vulnerabilities which

permitted the Data Breach to occur;

j.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiffs and Class Members;

k.  Whether Plaintiffs and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

l.  Whether Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

m.  Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

219.  <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Defendant's misfeasance.

220.  <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

221.  <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately

represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiffs seek no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

222.    Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

223.    The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class

Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

224. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

225. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

226. Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this complaint.

227. Further, Defendant have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

228. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of

which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a. Whether Defendant owed a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

    b. Whether Defendant breached a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

    c. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

    d. Whether an implied contract existed between Defendant on the one hand, and Plaintiffs and Class Members on the other, and the terms of that implied contract;

    e. Whether Defendant breached the implied contract;

    f. Whether Defendant adequately and accurately informed Plaintiffs and Class Members that their PII had been compromised;

    g. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    h. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiffs and Class Members; and,

    i. Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's

wrongful conduct.

## COUNT I
## NEGLIGENCE
### (On Behalf of Plaintiffs and the Nationwide Class)

229.    Plaintiffs and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 228.

230.    As a condition of being past and current customers of Defendant, Plaintiffs and Class Members were obligated to provide and entrust Defendant with certain PII.

231.    Plaintiffs and the Nationwide Class provided and entrusted their PII to Defendant the premise and with the understanding that Defendant would safeguard their information, use their PII for business purposes only, and not disclose their PII to unauthorized third parties.

232.    Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and the Nationwide Class could and would suffer if the PII were wrongfully disclosed.

233.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiffs and the Nationwide Class involved an unreasonable risk of harm to Plaintiffs and the Nationwide Class, even if the harm occurred through the criminal acts of a third party.

234.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the PII of Plaintiffs

and the Nationwide Class in Defendant's possession was adequately secured and protected.

235.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove from an Internet-accessible environment the PII it was no longer required to retain pursuant to regulations and had no reasonable need to maintain in an Internet-accessible environment.

236.    Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PII of Plaintiffs and the Nationwide Class.

237.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiffs and the Nationwide Class.  That special relationship arose because Plaintiffs and the Nationwide Class entrusted Defendant with their confidential PII, a necessary part of obtaining services from Defendant.

238.    Defendant were subject to an "independent duty," untethered to any contract between Defendant and Plaintiffs or the Nationwide Class.

239.    A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Nationwide Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

240.    Plaintiffs and the Nationwide Class were the foreseeable and probable victims of any inadequate security practices and procedures.  Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiffs and the Nationwide Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Defendant's systems.

241.    Defendant's own conduct created a foreseeable risk of harm to Plaintiffs and the Nationwide Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the PII of Plaintiffs and the Nationwide Class, including basic encryption techniques freely available to Defendant.

242.    Plaintiffs and the Nationwide Class had no ability to protect their PII that was in, and possibly remains in, Defendant's possession.

243.    Defendant were in a position to protect against the harm suffered by Plaintiffs and the Nationwide Class as a result of the Data Breach.

244.    Defendant had and continue to have a duty to adequately disclose that the PII of Plaintiffs and the Nationwide Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and the Nationwide Class to (i) take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties and (ii) prepare for the sharing and detrimental use of their sensitive information.

245.    Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiffs and the Nationwide Class.

246.    Defendant have admitted that the PII of Plaintiffs and the Nationwide Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

247.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiffs and the Nationwide Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiffs and the Nationwide Class during the time the PII was within Defendant's possession or control.

248.    Defendant improperly and inadequately safeguarded the PII of Plaintiffs and the Nationwide Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

249.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the PII of Plaintiffs and the Nationwide Class in the face of increased risk of theft.

250.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and the Nationwide Class by failing to have appropriate procedures in place to detect and prevent dissemination of the PII.

251.    Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove from the Internet-accessible environment any PII it was no longer required to retain pursuant to regulations and which Defendant had no reasonable need to maintain in an Internet-accessible environment.

252.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiffs and the Nationwide Class the existence and scope of the Data Breach.

253.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiffs and the Nationwide Class, the PII of Plaintiffs and the Nationwide Class would

not have been compromised.

254.    There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiffs and the Nationwide Class and the harm, or risk of imminent harm, suffered by Plaintiffs and the Nationwide Class.  The PII of Plaintiffs and the Nationwide Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

255.    As a direct and proximate result of Defendant's negligence, Plaintiffs and the Nationwide Class  have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how its PII is used; (iii) the compromise, publication, and/or theft of its PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of its PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to its PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the PII of Plaintiffs and the Nationwide Class ; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and

the Nationwide Class .

256.    As a direct and proximate result of Defendant's negligence, Plaintiffs and the Nationwide Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

257.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiffs and the Nationwide Class have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the PII in its continued possession.

258.    As a direct and proximate result of Defendant's negligence, Plaintiffs and the Nationwide Class are entitled to recover actual, consequential, and nominal damages.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiffs and the Nationwide Class)**

259.    Plaintiffs and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 228.

260.    Defendant's Privacy Policy, posted on its website, represents that it "[w]e use commercially reasonable physical, managerial, and technical safeguards to preserve the integrity and security of your Information and our systems. We cannot, however, ensure or warrant the security of any information you transmit to Us and you do so at your own risk. However, please note that this is not a guarantee that such information may not be accessed, disclosed, altered, or destroyed by breach of any of our physical, technical, or

managerial safeguards."[17]

261.    Defendant parent company's 2021 Annual Report, filed with the SEC in July 2021, represents that "Our information systems are largely Internet-based, including our point-of-sale reservation system, payment processing and telephone systems. While our reliance on this technology lowers our cost of providing service and expands our abilities to better serve customers, it exposes us to various risks including natural and man-made disasters, terrorist attacks and cyber-attacks. We have put into place extensive security protocols, backup systems and alternative procedures to mitigate these risks."[18]

262.    In being past and current customers of Defendant, Plaintiffs and the Nationwide Class provided and entrusted their PII to Defendant.

263.    Defendant's website confirms that Defendant intended to bind itself to protect the PII that Plaintiffs and the Nationwide Class submitted to Defendant.

264.    Defendant required Plaintiffs and the Nationwide Class to provide and entrust their PII as condition of being past and current customers of Defendant.

265.    As a condition of being past and current customers of Defendant, Plaintiffs and the Nationwide Class provided and entrusted their PII.  In so doing, Plaintiffs and the Nationwide Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such PII, to keep such PII secure and confidential, and to

---

[17] Exhibit 1.

[18] AMERCO 2021 Annual Report, *available at* https://www.amerco.com/reports.aspx (last visited Sept. 12, 2022).  AMERCO is Defendant's parent company.

timely and accurately notify Plaintiffs and the Nationwide Class if their PII had been compromised or stolen.

266.    Plaintiffs and the Nationwide Class fully performed their obligations under the implied contracts with Defendant.

267.    Defendant breached the implied contracts it made with Plaintiffs and the Nationwide Class by (i) failing to use commercially reasonable physical, managerial, and technical safeguards to preserve the integrity and security of Plaintiff's and the Nationwide Class's PII, (ii) failing to encrypt driver's license numbers and other sensitive PII, (iii) failing to delete PII it no longer had a reasonable need to maintain, and (iv) otherwise failing to safeguard and protect their PII and by failing to provide timely and accurate notice to them that PII was compromised as a result of the data breach.

268.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs and the Nationwide Class have suffered (and will continue to suffer) the threat of the sharing and detrimental use of their sensitive information; ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

269.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs and the Nationwide Class are entitled to recover actual, consequential, and nominal damages.

## COUNT III
**Violations of the Drivers Privacy Protection Act, 18 U.S.C. § 2721, *et seq.*
(On Behalf of Plaintiffs and the Nationwide Class)**

270.    Plaintiffs and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 228.

271.    Defendant knowingly obtained Plaintiffs' and the Nationwide Class's personal information, from a motor vehicle record, including their driver's licenses.

272.    Defendant voluntarily decided to populate its customer contracts when accessed via its contract search tool with Plaintiff's and the Nationwide Class's personal information, including their driver's license numbers.

273.    Defendant reasonably should have known that populating its customer contracts when accessed via its contract search tool would disclosure Plaintiff's and the Nationwide Class's driver's license numbers to cybercriminals for impermissible purposes.

274.    In failing implement reasonable measures to prevent the Data Breach, Defendant disclosed Plaintiff's and the Nationwide Class's driver's license numbers for an impermissible purpose.

275.    Each of Plaintiffs and Class Members demands actual damages, but not less than liquidated damages in the amount of $2,500, punitive damages upon proof of willful or reckless disregard of the law, reasonable attorney's fees and other litigation costs

reasonable incurred, and such other preliminary and equitable relief as the court determines to be appropriate.

## COUNT IV
### Declaratory Judgment
### (On Behalf of Plaintiffs and the Nationwide Class)

276.    Plaintiffs and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 228.

277.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Further, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this complaint.

278.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and the Nationwide Class's PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiffs and the Nationwide Class from further data breaches that compromise their PII.  Plaintiffs and the Nationwide Class allege that Defendant's data security measures remain inadequate. Defendant publicly denies these allegations. Furthermore, Plaintiffs and the Nationwide Class continue to suffer injury as a result of the compromise of their PII and remains at imminent risk that further compromises of their PII will occur in the future. It is unknown what specific measures and changes Defendant has undertaken in response to the Data Breach.

279.    Plaintiffs and the Nationwide Class have an ongoing, actionable dispute arising out of Defendant's inadequate security measures, including (i) Defendant's failure

to encrypt Plaintiffs' and the Nationwide Class's PII, including driver's license numbers, while storing it in an Internet-accessible environment and (ii) Defendant's failure to delete PII it has no reasonable need to maintain in an Internet-accessible environment, including the driver's license number of Plaintiff.

280.   Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.   Defendant owes a legal duty to secure the PII of past and current customers of Defendant;

    b.   Defendant continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII; and

    c.   Defendant's ongoing breaches of its legal duty continue to cause Plaintiffs and the Nationwide Class harm.

281.   This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry and government regulatory standards to protect consumers' PII. Specifically, this injunction should, among other things, direct Defendant to:

    d.   engage third party auditors, consistent with industry standards, to test its systems for weakness and upgrade any such weakness found;

    e.   audit, test, and train its data security personnel regarding any new or modified procedures and how to respond to a data breach;

    f.   regularly test its systems for security vulnerabilities, consistent with industry standards;

g.   implement an education and training program for appropriate employees regarding cybersecurity.

282.   If an injunction is not issued, Plaintiffs and the Nationwide Class will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiffs and the Nationwide Class will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

283.   The hardship to Plaintiffs and the Nationwide Class if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiffs and the Nationwide Class will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

284.   Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiffs and the Nationwide Class and others whose confidential information would be further compromised.

**COUNT V**
**Violations of California's Consumer Privacy Act,**
**Cal. Civ. Code § 1798.100, *et seq.* ("CCPA")**
**(On Behalf of Plaintiffs Peoples and Brooks and the California Subclass)**

285.    Plaintiffs Peoples and Brooks and the California Subclass re-allege and incorporate paragraphs 1-76, 149-157, 167-175, 212-228 as if fully set forth herein.

286.    Defendant violated section 1798.150(a) of the CCPA, Cal. Civ. Code § 1798.150(a), by failing to prevent Plaintiff Peoples's and Brooks's and the California Subclass's PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violations of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII.

287.    The PII of Plaintiffs Peoples and Brooks and the California Subclass was subjected to unauthorized access and exfiltration, theft, or disclosure as a direct and proximate result of Defendant's violations of its duty under the CCPA.

288.    Plaintiffs Peoples and Brooks and the California Subclass lost money or property, including but not limited to the loss of legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses as a direct and proximate result of Defendant's acts described above.

289.    Defendant knew, or should have known, that its network computer systems and data security practices were inadequate to safeguard PII and that the risk of a data breach or theft was highly likely. Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect PII, such as properly encrypting the PII so in the event of a data breach an unauthorized third party cannot read the PII. As a result of the failure to implement reasonable security procedures and practices, the PII of Plaintiff Peoples and members of the California Subclass was exposed.

290.   Defendant is organized for the profit or financial benefit of its owners and collects PII as defined in Cal. Civ. Code § 1798.140.

291.   Defendant has a gross annual revenue of over $25 million and buys, receives, or sells the personal information of 50,000 or more California residents, households, or devices.

292.   Plaintiff and California Class members seek relief under § 1798.150(a), including, but not limited to, recovery of actual damages; injunctive or declaratory relief; any other relief the court deems proper; and attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5).

293.   Plaintiffs' counsel mailed written notice to Defendant's registered service agents via certified mail on October 6, 2022. Assuming Defendant does not cure the Data Breach within 30 days, and Plaintiffs believe any such cure is not possible under these facts and circumstances, Plaintiffs intend to amend this Complaint to seek statutory damages of no less than $100 and up to $750 per customer record subject to the Data Breach on behalf of the California Class as authorized by the CCPA.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and Class Members, requests judgment against Defendant and that the Court grant the following:

A.   For an Order certifying the Nationwide Class and California Subclass and appointing Plaintiffs and their Counsel to represent such Class and Subclass;

B.   For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of

the PII of Plaintiffs and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiffs and Class Members;

C.      For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members, including but not limited to an order:

i.      prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.     requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii.    requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiffs and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

iv.     requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiffs and Class Members;

v.      prohibiting Defendant from maintaining the PII of Plaintiffs and Class Members on a cloud-based database;

vi.     requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to

conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.   requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.   requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.   requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.   requiring Defendant to conduct regular database scanning and securing checks;

xi.   requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and Class Members;

xii.   requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security

personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.    requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv.    requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.    requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.    requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report

any deficiencies with compliance of the Court's final judgment;

D.      For an award of damages, including actual, consequential, statutory, and nominal damages, as allowed by law in an amount to be determined;

E.      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.      For prejudgment interest on all amounts awarded; and

G.      Such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand that this matter be tried before a jury.

Date: October 12, 2022                    Respectfully Submitted,

<u>/s/ Rory Brian Riley</u>
Rory Brian Riley (ASB 032933)
Morgan and Morgan Arizona PLLC
2355 E. Camelback Road Suite 335
Phoenix, AZ 85016
Phone: 602-735-0250
Email: briley@forthepeople.com

John A. Yanchunis*
Ryan D. Maxey*
**MORGAN & MORGAN COMPLEX BUSINESS DIVISION**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
jyanchunis@ForThePeople.com
rmaxey@ForThePeople.com

*Attorneys for Plaintiffs and the Proposed Class*

*\*pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 12th day of October, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list.

/s/ Rory Brian Riley
Rory Brian Riley (ASB 03293)