David S. Norris (AZ Bar No. 034309)
david.norris@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
Tel: (602) 528-4000 | Fax: (602) 253-8129

Alfred J. Saikali (*pro hac vice*)
asaikali@shb.com
SHOOK, HARDY, & BACON L.L.P.
201 South Biscayne Blvd., Suite 3200
Miami, Florida 33131
Tel: (305) 358-5171 | Fax: (305) 358-7470

Tammy B. Webb (*pro hac vice*)
tbwebb@shb.com
SHOOK, HARDY, & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900 | Fax: (415) 391-0281

*Attorneys for Defendant U-Haul International, Inc.*

[Additional Counsel on Signature Page]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Felicia Durgan; William Frierson; Michelle Anderson; Saray Hendricks; Delbert Gibson III; Bruce Proctor Jr.; and Peter Telford; individually and on behalf of themselves and all others similarly situated, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U-Haul International, Inc.,<br><br>Defendant. | Lead Case No. CV-22-01565-PHX-MTL<br><br>Consolidated Case Nos.:<br><br>Case No.: 2:22-cv-01608<br>Case No.: 2:22-cv-01625<br>Case No.: 2:22-cv-01631<br>Case No.: 2:22-cv-01658<br>Case No.: 2:22-cv-01693<br><br>**DEFENDANT UHI'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |

**TABLE OF CONTENTS**

Page

INTRODUCTION & BACKGROUND ...................................................................................1

LEGAL STANDARD.................................................................................................................1

ARGUMENT ..............................................................................................................................2

I.    Plaintiffs' negligence claim should be dismissed. ........................................................2

    A.    Plaintiffs do not allege a cognizable injury. ......................................................2

    B.    Plaintiffs do not allege causation. ......................................................................5

II.    Plaintiffs' breach of implied contract claim lacks merit............................................5

III.    Plaintiffs' state statutory claims should be dismissed. ..............................................7

    A.    Plaintiffs' ACFA claim fails. ..............................................................................7

    B.    UHI Respectfully Requests Reconsideration of Plaintiffs' CCPA Claim......9

CONCLUSION ........................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ambry Genetics Data Breach Litig.*,
  567 F. Supp. 3d 1130 (C.D. Cal. 2021) ................................................................. 6

*In re Arizona Theranos, Inc., Litig.*,
  308 F. Supp. 3d 1026 (D. Ariz. 2018) .................................................................. 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ 1

*In re Banner Health Data Breach Litig.*,
  2017 WL 6763548 (D. Ariz. Dec. 20, 2017) ........................................................ 7

*Bergdale v. Countrywide Bank FSB*,
  2013 WL 105295 (D. Ariz. Jan. 9, 2013) ............................................................. 8

*Brush v. Miami Beach Healthcare Group, Ltd.*,
  238 F. Supp. 3d 1359 (S.D. Fla. Feb. 17, 2017) ................................................... 7

*Cheatham v. ADT Corp.*,
  161 F. Supp. 3d 815 (D. Ariz. 2016) .................................................................... 9

*Erchonia Med. Inc. v. Smith*,
  2005 WL 8160621 (D. Ariz. Dec. 21, 2005) ........................................................ 9

*Ferren v. Westmed Inc.*,
  2021 WL 2012654 (D. Ariz. May 20, 2021) ........................................................ 8

*Gershfeld v. Teamviewer US, Inc.*,
  2021 WL 3046775 (C.D. Cal. June 24, 2021) .................................................... 10

*Griffey v. Magellan Health Inc.*,
  562 F. Supp. 3d 34 (D. Ariz. 2021) (Liburdi, J.) ..................................... 2, 3, 4, 6

*Grimmelmann v. Pulte Home Corp.*,
  2010 WL 2744943 (D. Ariz. July 9, 2010) .......................................................... 9

*Kuehn v. Stanley*,
  208 Ariz. 124 (Ct. App. 2004) ............................................................................. 9

*Moreno v. Minnesota Life Ins. Co.*,
  2015 WL 1457419 (D. Ariz. Mar. 30, 2015) .................................................... 8, 9

*Rich v. BAC Home Loans Servicing LP*,
  2013 WL 10104612 (D. Ariz. Dec. 13, 2013) ...................................................... 7

*In re Rutter's Inc. Data Sec. Breach Litig.*,
  511 F. Supp. 3d 514 (M.D. Pa. 2021) .................................................................. 6

*In re White Elec. Designs Corp. Sec. Lit.*,
  416 F. Supp. 2d 754 (D. Ariz. 2006) .................................................................... 8

**Statutes**

A.R.S. § 44-1522(A) ................................................................................................................7

Cal. Civ. Code § 1798.150(a)(1) ............................................................................................10

**Other Authorities**

Fed. R. Civ. P. 8 .....................................................................................................................10

Fed. R. Civ. P. 9(b) ..............................................................................................................7, 8

Fed. R. Civ. P. 12(b)(6) ............................................................................................................1

Defendant U-Haul International Inc. ("UHI") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiffs' First Amended Consolidated Class Action Complaint (the "Amended Complaint") (Dkt. 33) with prejudice, for Plaintiffs' failure to state a claim upon which relief can be granted.

## INTRODUCTION & BACKGROUND[1]

On July 28, 2023, the Court granted in part and denied in part Plaintiffs' Amended Consolidated Complaint (the "Order"). Dkt. 31. The Court dismissed all but one claim, based on Plaintiffs' failure to allege cognizable harms, failure to allege the existence of an implied contract, and failure to allege any material omission by UHI related to data security, among other reasons.

Not much has changed in Plaintiffs' Amended Complaint. Dkt. 33. Although Plaintiffs now assert only four causes of action—Negligence, Breach of Implied Contract, Violation of the Arizona Consumer Fraud Act, and Violation of the California Consumer Privacy Act—the substance of Plaintiffs' allegations is practically identical to that previously asserted. As a result, Plaintiffs still fail to state a claim under any theory, and their Amended Complaint should be dismissed with prejudice.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "plausibility standard" requires more than "a sheer possibility that a defendant has acted unlawfully," and "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

---

[1] UHI assumes for the purposes of this Motion that the Court is familiar with Plaintiffs' general allegations related to the Data Breach, and incorporates herein the factual background from its previous motion to dismiss and the Court's Order on the same. *See* Dkts. 22, 31.

1

# ARGUMENT

**I.      Plaintiffs' negligence claim should be dismissed.**

    **A.      Plaintiffs do not allege a cognizable injury.**

To plead a negligence claim, Plaintiffs must allege that their injuries are "actual and appreciable, non-speculative, and more than merely the threat of future harm." *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 45 (D. Ariz. 2021) (Liburdi, J.).[2] Plaintiffs have again failed to allege non-speculative harms.

*Increased risk of future harm.* As the Court recognized in its Order, "[i]n determining whether a data breach presents a real and immediate harm, the sensitivity of the compromised PII is instructive." Order, p. 5. Here, however, the compromised PII has not changed; the data at issue (still) includes names, dates of birth, and driver's license or state identification numbers. And while the "unauthorized disclosure of this information is undoubtedly problematic, courts have repeatedly found that, without more, these categories of PII do not give rise to a real and immediate risk of harm." Order, p. 5 (collecting cases).

The Amended Complaint has not resolved this deficiency. Plaintiffs' additional allegations add color to how hackers *could* use the data at issue, *see* Am. Compl., ¶¶ 71–89, but nowhere in the Amended Complaint do Plaintiffs allege that any other type of data was compromised. As this Court held, "[w]ithout disclosure of social security number, bank, or credit card information . . . the PII does not present a clear ability for unscrupulous actors to commit fraud or identity theft." Order, p. 6.

Moreover, as previously alleged, Plaintiffs Frierson and Anderson claim they have been the victim of fraudulent charges on their back account or credit card. Am. Compl. ¶¶ 120, 130. The Amended Complaint further alleges that it is "unlikely" that this fraud stemmed from anything but the Data Breach, because Plaintiffs otherwise acted reasonably with their personal information. Am. Compl. ¶¶ 121, 130. These allegations fail to allege a real or immediate harm. Once again, Plaintiffs rely on pure speculation and ask the Court to do the same.

---

[2] Arizona law applies to Plaintiff's common law claims. *See e.g.*, *Griffey*, 562 F. Supp. 3d at 44 (applying Arizona law).

2

1  Plaintiffs do not allege that any financial information was impacted by the Data Breach—so
2  this Court must speculate as to how disclosure of the data at issue could cause the alleged
3  financial fraud. Particularly here, where Frierson and Anderson claim that "[t]o the best of
4  [their] knowledge," they have "never been the victim of another data breach." Am. Compl. ¶¶
5  121, 130. Plaintiffs' allegations are far from plausible.

6       At bottom, the data at issue in the Amended Complaint still "does not provide hackers
7  with a clear ability to commit fraud or identity theft." Order, p. 5. As a result, Plaintiffs'
8  allegations of future risk of harm are speculative.

9       ***Mitigation efforts and out of pocket expenses.*** Since Plaintiffs have failed to allege an
10 imminent risk of future harm, their alleged mitigation efforts are "similarly speculative."
11 Order, p. 6. Plaintiffs' allegations of out of pocket expenses are similarly conjectural, for the
12 same reason. *See* Order, p. 9 ("These [out of pocket expense] allegations fail for largely the
13 same reasons as Plaintiffs' mitigation effort allegations."). The Amended Complaint also still
14 lacks even conclusory allegations that any out of pocket expenses were reasonable or
15 necessary. *See Griffey*, 562 F. Supp. 3d at 47; Order, p. 9. Thus, for the reasons described
16 above, the Court should find that Plaintiffs' alleged mitigation efforts and out of pocket
17 expenses are not cognizable harms.

18      ***Lost value of personal information.*** To allege a cognizable injury for diminished value
19 of PII, Plaintiffs must establish that "a market exists for the personal information at issue and
20 an impairment in a plaintiff's ability to participate in that market." *Griffey*, 562 F. Supp. 3d at
21 46. "[M]erely alleging that PII has value in general is insufficient." Order, p. 7. This Court
22 previously found that Plaintiffs' allegations of diminished value of PII were not cognizable
23 because they "failed to establish the existence of a market for their PII, [and] they also fall
24 short of making any specific allegation that their PII lost any value." Order, p. 7. Both
25 deficiencies are still present in the Amended Complaint.

26      First, the Amended Complaint alleges that an "active and robust legitimate
27 marketplace" exists for PII *generally*, but Plaintiffs' allegations do not demonstrate that a
28 legitimate market exists for the data at issue in this case. *See* Am. Compl. ¶ 98. Indeed, the

1 articles and websites cited by Plaintiffs in the Amended Complaint do not demonstrate the existence of a market for dates of birth or driver's license or state identification numbers; they relate only to market data or "web browsing history" sold to marketing companies, which are not at issue here. *See* Am. Compl. ¶ 98 n.35 (offering compensation for unnamed "valuable data"), n.36 (describing a digital bank profile representing "behavior, biometrics, and location and devices used"), n.37 (offering compensation for web browsing history), n.38 (describing an app that compensates you for "fill[ing] out an account describing yourself" so that companies "get more information from someone who has your character."). Moreover, the only allegations specifically related to dates of birth or driver's license or state identification numbers discuss the "black market," and the value this information has to "hackers," and "cyber criminals." Am. Compl. ¶¶ 101, 103. In fact, Plaintiffs concede that "the only reason the cybercriminals go through the trouble of running a targeted cyberattack against a company like U-Haul is to get information that they can monetize **by selling on the black market**[.]" Am. Compl. ¶ 103. As this Court has already held, the black market is not "a legitimate market by which individuals may sell their information." *Griffey*, 562 F. Supp. 3d at 46. And even if it were, Plaintiffs do not allege that any of the information at issue was sold on the black market. Simply put, the Amended Complaint does not allege that a legitimate market exists for the data at issue, or that Plaintiffs have been impaired from participating in any such market.

Second, the Amended Complaint reiterates Plaintiffs' allegation that they suffered "[a]scertainable losses in the form of deprivation of the value of their Personal Information for which there is a well-established and quantifiable national and international market[.]" Am. Compl. ¶ 94(h). But, once again, Plaintiffs have again failed to allege what *specific* losses their PII suffered, or how the Data Breach caused those non-existent losses. *See* Order, pp. 7–8. The Court should reject Plaintiff's claim for diminution of value of PII.

***Loss of benefit of the bargain.*** Plaintiffs' benefit of the bargain allegations have not changed. Plaintiffs claim they lost "the difference in value between what [Plaintiffs] should have received from Defendant and Defendant's defective and deficient performance of that

obligation by failing to provide reasonable and adequate data security and failing to protect [Plaintiffs'] Private Information[.]" Am. Compl. ¶¶ 112, 122, 131, 139, 147, 155, 163. But Plaintiffs do not allege that UHI made any promises related to data security or otherwise created expectations of data security—indeed, "it is difficult to imagine that Plaintiffs could" given that they purchased UHI's storage and rental services, not data security. Order, p. 8; Am. Compl. ¶ 106. As this Court has recognized, "the safekeeping of Plaintiffs' PII was incidental to the provisions of such services [and] does not mean that Plaintiffs lost the benefit of the bargain." Order, p. 8. Moreover, the Amended Complaint alleges that UHI specifically *warned* its customers that, despite UHI's reasonable precautions, its systems could be "susceptible to . . . attacks by computer hackers[.]" Am. Compl. ¶ 48. Without allegations that UHI made promises related to data security to induce Plaintiffs to engage UHI's services, Plaintiffs have failed to establish a lost benefit of the bargain. *See* Order, p. 8.

In sum, Plaintiffs' Amended Complaint still alleges only speculative injuries. Because Plaintiffs have failed again to allege any present injuries, their negligence claim should be dismissed with prejudice.

    **B. Plaintiffs do not allege causation.**

Like Plaintiffs' previous complaint, the Amended Complaint alleges that there is a "close causal connection" between UHI's failure to implement certain security measures and Plaintiffs' alleged "harm." Am. Compl. ¶ 213. Plaintiffs now claim that UHI could have prevented the Data Breach by undertaking a variety of actions, *see* Am. Compl. ¶ 209, but they still fail to explain how those deficiencies "led to the alleged harm." Order, p. 10. As a result, the Amended Complaint still lacks plausible allegations establishing causation.

**II. Plaintiffs' breach of implied contract claim lacks merit.**

This Court previously dismissed Plaintiffs' breach of implied contract claim because Plaintiffs failed to sufficiently allege the terms of the contract, failed to allege consideration, and failed to plead cognizable damages. *See* Order, pp. 11–12. The Amended Complaint still suffers from these same defects.

5

1    First, Plaintiffs do not allege an actual injury, for all the reasons discussed above. This failure alone requires dismissal. *See Griffey*, 562 F. Supp. 3d at 51 ("In a breach of contract claim, the plaintiff must demonstrate that the breach caused an injury.") (citing *Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 96 (2013), *Cole v. Atkins*, 69 Ariz. 81, 86 (1949), and *Lindsey v. Univ. of Arizona*, 157 Ariz. 48, 54 (App. 1987)).

Second, the Amended Complaint does not specify the terms of the alleged contract. As before, Plaintiffs allege that UHI "implicitly agreed to safeguard and protect [Plaintiffs'] PII, to keep such PII secure and confidential, and to timely and accurately notify Plaintiffs . . . if their PII had been compromised or stolen." Am. Compl. ¶ 223. This Court has already held that such allegations are insufficient, because they are "vague" and fail to "explain the origin of these implied agreement terms"—such that they "leave the Court guessing as to the metrics by which [UHI's] performance can be analyzed." Order, p. 11. Once again, the Amended Complaint cites UHI's Privacy Policy and its 2021 Annual Report, but fails to point out any provision of those documents that made a promise of data security. *See* Am. Compl. ¶¶ 221, 222. As discussed above, UHI went out of its way to set reasonable expectations for its customers, specifically warning them that while UHI's Internet-based technology enables it to lower costs and better serve customers, it "exposes [UHI] to various risks including . . . cyber-attacks." Am. Compl. ¶ 222.³ Thus, even if Plaintiffs had read and relied on UHI's Privacy Policy or its 2021 Annual Report—which they do not allege—Plaintiffs have failed to allege that either document made any promises to support an implied contract.⁴

Third, and for related reasons, Plaintiffs fail to allege consideration. Without allegations

---

³ Notably, Plaintiffs removed allegations relating to UHI's Privacy Policy, which stated that UHI could not "ensure or warrant the security of any information" provided by customers, and that the policy "is not a guarantee that such information may not be accessed, disclosed, altered, or destroyed by breach of any of [UHI's] physical technical, or managerial safeguards." Dkt. 18, ¶ 5; *see also* Order, p. 12 n.5.

⁴ The Amended Complaint cites two non-binding district court cases to support Plaintiffs' argument that an implied contract existed: *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514 (M.D. Pa. 2021) and *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130 (C.D. Cal. 2021). *See* Am. Compl. ¶ 224. But these cases merely demonstrate—as *In re Rutter's* recognized—that "federal courts are not unified on this issue" and "the law is still unsettled in many states." *In re Rutter's*, 511 F. Supp. 3d at 537. This Court appropriately held (and should hold again) that under Arizona law, Plaintiffs have failed to allege the existence of an implied contract. *See* Order, p. 11; *see also Griffey*, 562 F. Supp. 3d at 51.

6

detailing the terms of the alleged implied contract, it is impossible to know what consideration could support this claim. The Amended Complaint alleges that Plaintiffs were "required" to provide their PII to obtain UHI's services. Am. Compl. ¶ 220. But as this Court already found, Plaintiffs contracted with UHI for vehicle or storage rental services, not data security. Order, p. 8; *see also* Am. Compl. ¶¶ 106, 114, 124, 133, 141, 149, 157 (alleging that each Plaintiff contracted with UHI to receive "vehicle or storage rental services."). And more importantly, Plaintiffs' disclosure of PII was incidental to their purchases, and thus could not serve as consideration to support an implied contract. *See* Order, p. 8 ("the safekeeping of Plaintiffs' PII was incidental to the provisions of [UHI's] services"); *Brush v. Miami Beach Healthcare Group, Ltd.*, 238 F. Supp. 3d 1359, 1369 (S.D. Fla. Feb. 17, 2017) (refusing to recognize an implied contract because plaintiff transacted "to receive *healthcare services . . . not data security services*" (emphasis added)).

Plaintiffs' breach of implied contract claim should be dismissed with prejudice.

**III.    Plaintiffs' state statutory claims should be dismissed.**

**A.    Plaintiffs' ACFA claim fails.**

The Arizona Consumer Fraud Act prohibits "fraudulent, deceptive, or misleading conduct in connection with the sale of consumer goods and services." *In re Banner Health Data Breach Litig.*, 2017 WL 6763548, at *6 (D. Ariz. Dec. 20, 2017) (citing A.R.S. § 44-1522(A)). In the Amended Complaint, Plaintiffs allege that UHI violated the ACFA by "engag[ing] in unfair acts and practices . . . by failing to implement and maintain reasonable security measures to protect and secure Plaintiffs' . . . PII[.]" Am. Compl. ¶ 237. But this allegation does not assert any unlawful conduct under the ACFA, let alone any reliance. Plaintiffs' ACFA claim should be dismissed with prejudice.

As an initial matter, Plaintiffs' ACFA claim is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Rich v. BAC Home Loans Servicing LP*, 2013 WL 10104612, at *3 (D. Ariz. Dec. 13, 2013) ("Because ACFA claims involve allegations of fraud, they must be pled with particularity."). Plaintiffs try to plead around this standard by shedding their fraud-by-omission theory, yet still allege that "U-Haul knew or should have known that

7

1  its computer system and data security practices were inadequate" and "was or should have
2  been aware" of certain FTC standards that they allegedly violated. Am. Compl. ¶¶ 240, 241.
3  These allegations sound in fraud. *See In re White Elec. Designs Corp. Sec. Lit.*, 416 F. Supp.
4  2d 754, 777–78 (D. Ariz. 2006) ("A claim 'sounds in fraud' when the plaintiff alleges a unified
5  course of fraudulent conduct and relies entirely on that course of conduct as the basis of a
6  claim.") (cleaned up) (citing *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th
7  Cir. 2003)). Allegations sounding in fraud must comply with Rule 9(b).

8  But regardless of what standard this Court applies, Plaintiffs' ACFA claim fails for the
9  most basic reason: Plaintiffs do not allege that UHI made any false promise, misrepresentation,
10 or omission, which is a required (and fundamental) element of an ACFA claim. *See, e.g.*,
11 *Ferren v. Westmed Inc.*, 2021 WL 2012654, at *4 (D. Ariz. May 20, 2021) ("The elements of
12 a private claim under [the ACFA] are **a false promise or misrepresentation**, made in
13 connection with the sale or advertisement of merchandise, and the plaintiff's consequent and
14 proximate injury from reliance on such a misrepresentation.") (quotations omitted); *In re*
15 *Arizona Theranos, Inc., Litig.*, 308 F. Supp. 3d 1026, 1040 (D. Ariz. 2018) ("Generally stated,
16 claims under the [A]CFA, like common law fraud claims, can be based on **affirmative**
17 **misrepresentations, concealment, or omission of material facts**."); *Moreno v. Minnesota*
18 *Life Ins. Co.*, 2015 WL 1457419, at *4 (D. Ariz. Mar. 30, 2015) (to state an ACFA claim,
19 "plaintiff **must show a false promise or misrepresentation** made in connection with the sale
20 or advertisement of merchandise and consequent and proximate injury resulting from the
21 promise."); *Bergdale v. Countrywide Bank FSB*, 2013 WL 105295, at *3 (D. Ariz. Jan. 9,
22 2013) ("To succeed on a claim of consumer fraud, a plaintiff **must show a false promise or**
23 **misrepresentation** made in connection with the sale or advertisement of merchandise and
24 consequent and proximate injury resulting from the promise."). Instead, Plaintiffs attempt to
25 impose liability under the ACFA based on UHI's alleged "failure to implement and follow
26 reasonable data security measures." Am. Compl. ¶¶ 237, 239. But that is simply not actionable
27 conduct under the ACFA. Plaintiffs' must show "a false promise or misrepresentation made
28 in connection with the sale or advertisement of merchandise and consequent and proximate

injury resulting from the promise." *Kuehn v. Stanley*, 208 Ariz. 124, 129 (Ct. App. 2004). At bottom, Plaintiffs' allegations are nothing but an attempt to resuscitate their claim for negligence; they do not state a claim for consumer fraud.[5]

Setting this deficiency aside, Plaintiffs also do not allege that they were damaged as a result of any violation of the Act. *See* Am. Compl. 233–42. Plaintiffs' ACFA claim fails for this independent reason. *See Grimmelmann v. Pulte Home Corp.*, 2010 WL 2744943, at *3 (D. Ariz. July 9, 2010) ("[B]efore a private party can assert a claim under the ACFA, he **must have been damaged** by the prohibited practice.") (quotations omitted and emphasis supplied); *see also Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 825 (D. Ariz. 2016) ("Arizona courts construe the ACFA to provide a right of action on any person **damaged** by a violation of the Act.") (emphasis supplied).

Lastly, Plaintiffs fail to allege reliance. Allegations of reliance are a "prerequisite" to recovery under the ACFA. *See Erchonia Med. Inc. v. Smith*, 2005 WL 8160621, at *10 (D. Ariz. Dec. 21, 2005) (citing *Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. 1978)); *see also Moreno v. Minnesota Life Ins. Co.*, 2015 WL 1457419, at *4 (D. Ariz. Mar. 30, 2015). Plaintiffs do not even make a conclusory allegation of reliance—and they *cannot* do so here, because they do not allege a misrepresentation or omission by UHI that they could possibly rely on. This failure also requires dismissal.

### B. UHI Respectfully Requests Reconsideration of Plaintiffs' CCPA Claim.

The Court previously held that Plaintiffs had sufficiently alleged their CCPA claim because Plaintiffs alleged that "U-Haul could have prevented the Data Breach by encrypting Plaintiffs' PII." Order, pp. 15–16. UHI respectfully asks the Court to reconsider its ruling, for two reasons.

First, the CCPA applies only to consumers "whose **nonencrypted and nonredacted** personal information . . . is subject to an unauthorized access[.]" Cal. Civ. Code § 1798.150(a)(1). Thus, the fact that the data at issue here was unencrypted is already a

---

[5] Moreover, even if Plaintiffs had alleged that UHI's Privacy Policy or its 2021 Annual Report acted as an affirmative misrepresentation, their claim would still fail, because Plaintiffs do not allege that they read or relied on those documents when they purchased UHI's services.

9

1    prerequisite to Plaintiffs' claim; the failure to encrypt information cannot also serve as the
2    alleged unreasonable security practice. To hold otherwise would effectively read that language
3    out of the CCPA entirely. Stated differently, the CCPA requires *both* that the consumer's data
4    be unencrypted and unredacted, and *also* that that data was subject to unauthorized access due
5    to a business's failure to implement reasonable security procedures. By alleging only that UHI
6    failed to redact the data at issue, Plaintiffs have failed to allege that UHI engaged in any
7    unreasonable security practices.

8          Second, and relatedly, UHI maintains that Plaintiffs have failed to allege a sufficient
9    causal connection—even under the minimal standard of Rule 8. The alleged failure to encrypt
10   data might allow a bad actor to view information once it is exfiltrated, but the failure to encrypt
11   would not have contributed to the hacker's ability to *exfiltrate* the data. The Amended
12   Complaint does not allege otherwise. And the CCPA only applies to information that has been
13   subject to both "unauthorized access **and** exfiltration, theft, or disclosure as a result of the
14   business's violation of the duty to implement and maintain reasonable security procedures and
15   practice." Cal. Civ. Code § 1798.150(a)(1) (emphasis supplied). Plaintiffs have simply not
16   alleged that UHI failed to implement reasonable security practices that would have prevented
17   "exfiltration, theft, or disclosure." For this reason, Plaintiffs do not sufficiently allege
18   causation. *See Gershfeld v. Teamviewer US, Inc.*, 2021 WL 3046775, at *2 (C.D. Cal. June
19   24, 2021) (dismissing CCPA claim because "Plaintiff alleges that Defendant stored his
20   personal information 'in a nonencrypted and nonredacted fashion,' but the disclosure of
21   Plaintiff's personal information *was not caused by this practice*.") (emphasis supplied).

## CONCLUSION

23         Plaintiffs' Amended Complaint should be dismissed with prejudice.
24   / / /

Dated: August 24, 2023

By: */s/ David S. Norris*
One of Its Attorneys

David S. Norris (AZ Bar No. 034309)
david.norris@squirepb.com
**SQUIRE PATTON BOGGS (US) LLP**
2325 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
Tel: (602) 528-4000 | Fax: (602) 253-8129

Alfred J. Saikali (*pro hac vice*)
asaikali@shb.com
**SHOOK, HARDY, & BACON L.L.P.**
201 South Biscayne Blvd., Suite 3200
Miami, Florida 33131
Tel: (305) 358-5171 | Fax: (305) 358-7470

Tammy B. Webb (*pro hac vice*)
tbwebb@shb.com
**SHOOK, HARDY, & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900 | Fax: (415) 391-0281

Anna A. Gadberry (*pro hac vice*)
agadberry@shb.com
**SHOOK, HARDY, & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, MO 64108
Tel: (816) 474-6550 | Fax: (816) 421-5547

***Attorneys for Defendant***
***U-Haul International, Inc.***

11