Cristina Perez Hesano (#027023)
*cperez@perezlawgroup.com*
**PEREZ LAW GROUP, PLLC**
7508 N. 59th Avenue
Glendale, AZ 85301
Telephone: (602) 730-7100
Facsimile: (623) 235-6173

*Attorneys for Plaintiffs and the
Proposed Class*

*[Additional counsel on signature page]*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Michelle Anderson; Saray Hendricks; Peter Telford; Hulises Rolon; Denise Bowen; Bryan Bowen; Mark Johnson; Gerardo Rivera; and Ariana Allen, individually and on behalf of all others similarly situated, | Lead Case No. CV-22-01565-PHX-MTL |
| | Consolidated with: |
| | Case No.: 2:22-cv-01608; Case No.: 2:22-cv-01625; Case No.: 2:22-cv-01631; Case No.: 2:22-cv-01658; Case No.: 2:22-cv-01693. |
| Plaintiffs, | |
| v. | |
| U-Haul International, Incorporated, | **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| Defendant. | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iv

I.      INTRODUCTION ..................................................................... 1

II.     STATEMENT OF FACTS ........................................................ 1

III.    PROCEDURAL HISTORY ....................................................... 1

IV.     THE SETTLEMENT TERMS ................................................... 3

        A.    Proposed Settlement Class ............................................... 3

        B.    Settlement Benefits .......................................................... 3

              1.    The Settlement Fund .............................................. 4

              2.    Remedial Measures ............................................... 5

              3.    Class Notice and Settlement Administration ............ 5

              4.    Attorneys' Fees and Expenses ................................ 5

              5.    Class Representative Service Awards ..................... 6

              6.    Release .................................................................. 6

V.      LEGAL AUTHORITY ............................................................. 7

VI.     ARGUMENT ........................................................................... 7

        A.    The Settlement Satisfies Rule 23(a). ................................. 9

              1.    The Proposed Class is Sufficiently Numerous .......... 9

              2.    The Settlement Class Satisfies the Commonality
                    Requirement ......................................................... 10

              3.    Plaintiffs' Claims and Defenses Are Typical of Those
                    of the Settlement Class ........................................ 10

              4.    Plaintiffs Will Adequately Protect the Interests of the Class .. 11

              5.    The Class is Ascertainable .................................... 12

        B.    The Requirements of Rule 23(b)(3) Are Met for Purposes of
              Settlement ....................................................................... 12

        C.    The Settlement Should Be Preliminarily Approved Pursuant to
              Rule 23(e) ...................................................................... 14

1           1.     The Strength of Plaintiffs' Case ............................................... 16

2           2.     The Risk, Expense, Complexity, and Likely Duration of

3                  Further Litigation ...................................................... 17

4           3.     The Risk of Maintaining Class Action Status Through Trial .. 17

5           4.     The Amount Offered in Settlement ......................................... 18

6           5.     The Extent of Discovery Completed and the Stage of

7                  Proceedings ............................................................... 19

8           6.     The Experience and Views of Counsel .................................... 19

9           7.     Governmental Participants. .................................................... 20

10          8.     The Reaction of the Class Members to the Proposed

11                Settlement ................................................................. 20

12          9.     Lack of Collusion Among the Parties ...................................... 20

13          10.   The Settlement Treats Settlement Class Members Equitably . 20

14     D.    The Court Should Approve the Proposed Notice Program ................ 21

15     E.    Appointment of the Settlement Administrator .................................. 22

16     F.    Appointment of Class Counsel ......................................................... 22

17  VII. CONCLUSION ............................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................. 8, 9, 12, 13

*Avila v. LifeLock Inc.*,
   No. 2:25-cv-01398, 2020 WL 4362394 (D. Ariz. July 27, 2020)................................. 6

*Bloom v. City of San Diego*,
   No. 17-cv-02324, 2024 WL 1162103 (S.D. Cal. Mar. 18, 2024) ............................... 20

*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013).................................................................. 13

*Bykov v. DC Trans. Services, Inc.*,
   No. 2:18-cv-1692 DB, 2019 WL 1430984 (E.D. Cal. Mar. 29, 2019) ....................... 15

*Calderon v. Wolf Firm*,
   No. SACV 16-1622-JLS(KESx), 2018 WL 6843723 (C.D. Cal. Mar. 13, 2018) ....... 18

*Carter v. Vivendi Ticketing US LLC*,
   No.  2022-01981-CJC, 2023 WL 8153712 (C.D. Cal. Oct. 30, 2023) ....................... 17

*Celano v. Marriott Int'l Inc.*,
   242 F.R.D. 544 (N.D. Cal. 2007) ................................................................... 9

*Chester v. TJX Cos.*,
   No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) ......... 16

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992)..................................................................... 7

*Dennis v. Kellogg Co.*,
   No. 09-cv-1786-L(WMc), 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ................. 16

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011)................................................................. 9, 11

*Franklin v. Kaypro Corp.*,
   884 F.2d 1222 (9th Cir. 1989)..................................................................... 16

*Garrett v. Advantage Plus Credit Reporting Inc.*,
   No. CV-21-02082, 2024 WL 1603442 (D. Ariz. Apr. 12, 2024)................................. 6

*Gaston v. FabFitFun, Inc.*,
   No. 2:20-cv-09534, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) .............................. 17

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) ...................................................................... 15

*Gribble v. Cool Transports Inc.*,
   No. CV 06-4863 GAF (SHx), 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008)............ 15

*Guy v. Convergent Outsourcing, Inc.*,
   No. C22-1558 MJP, 2023 WL 8778166 (W.D. Wash. Dec. 19, 2023) ...................... 10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998).......................................................... 11, 12, 16

*Hillman v. Lexicon Consulting, Inc.*,
   No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869 (C.D. Cal. April 27, 2017).... 19

*Holly v. Alta Newport Hosp., Inc.*,
   612 F. Supp. 3d 1017 (C.D. Cal. 2020) ............................................................ 9

*Hudson v. Libre Technology Inc.*,
   No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060 (S.D. Cal. May 13, 2020) ............ 21

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) ................................................................ 13

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)...................................................................... 16

*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) .......................................................... 13, 18

*In re Marriott Int'l Customer Data Security Breach Litig.*,
   341 F.R.D. 128 (D. Md. 2022) .................................................................. 17

*In re Marriott Int'l Customer Data Sec. Breach Litig.*,
   No. 19-MD-2879, 2023 WL 8247865 (D. Md. Nov. 29, 2023).................................. 18

*In re Marriott Int'l, Inc.*,
   78 F.4th 677 (4th Cir. 2023) ...................................................................... 18

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)........................................................................ 6

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................. 15, 21

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    MDL No. 14-2522, 2017 WL 2178306 (D. Minn. May 17, 2017) .............................. 18

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,
    No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ............... 10

*In re Yahoo Mail Litig.*,
    No. 13-CV-4980, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) .................................. 6

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ................................................................................... 11, 13

*Kastler v. Oh My Green*,
    19-cv-02411, 2022 WL 1157492 (N.D. Cal. Apr. 19, 2022) ....................................... 20

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ................................................................................. 12

*Lilly v. Jamba Juice Co.*,
    308 F.R.D. 231 (N.D. Cal. 2014) ................................................................................. 12

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234, 1239 (9th Cir. 1998) ........................................................................... 19

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ..................................................................................... 14

*Longest v. Green Tree Servicing LLC*,
    308 F.R.D. 310 (C.D. Cal. 2015) ................................................................................. 11

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) ................................................................................... 15

*Meyer v Portfolio Recovery Associates*,
    707 F.3d 943 (9th Cir. 2012) ....................................................................................... 10

*Murillo v. Pacific Gas & Elec. Co.*,
    266 F.R.D. 468 (E.D. Cal. 2010) ................................................................................. 15

*Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*,
    303 F.R.D. 337 (E.D. Cal. 2014) ................................................................................. 15

*Orantes-Hernandez v. Smith*,
    541 F. Supp. 351 (C.D. Cal. 1982) ................................................................................ 9

*Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*,
    65 F. Supp. 3d 1046 (D. Or. 2014) ............................................................................... 12

*Pauley v. CF Entm't*,
   No. 1:13-CV-08011, 2020 WL 5809953 (C.D. Cal. July 23, 2020) ............................ 6

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ..................................................................................... 21

*Rannis v. Recchia*,
   380 F. App'x 646 (9th Cir. 2010) ................................................................... 9

*Reyes v. Experian Info. Sols., Inc.*,
   No. SACV1600563AGAFMX, 2020 WL 466638 (C.D. Cal. Jan. 27, 2020) ............. 14

*Smith v. Triad of Ala., LLC*,
   No. 1:14-CV-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) ................. 17

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ..................................................................................... 13

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..................................................................................... 10

*Williams v. Oberon Media, Inc.*,
   468 F. App'x 768 (9th Cir. 2012) ................................................................... 12

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ....................................................................... 14

**Statutes**

18 U.S.C. § 2721 ........................................................................................... 2

Cal. Civ. Code § 1798.100 .............................................................................. 10

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................. 9, 10, 12

Fed. R. Civ. P. 23(a)(1) .................................................................................. 9

Fed. R. Civ. P. 23(a)(3) ................................................................................. 10

Fed. R. Civ. P. 23(a)(4) ................................................................................. 11

Fed. R. Civ. P. 23(b)(1), (2) or (3) ................................................................. 12

Fed. R. Civ. P. 23(b)(3) ............................................................................ 12, 13

Fed. R. Civ. P. 23(b)(3)(D) ............................................................................ 13

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................. 5

vii

Fed. R. Civ. P. 23(e) ............................................................................ 7, 14, 16

Fed. R. Civ. P. 23(e)(1) ................................................................................ 14

Fed. R. Civ. P. 23(e)(1)(B) ........................................................................... 21

Fed. R. Civ. P. 23(e)(2) .......................................................................... 14, 15

Fed. R. Civ. P.  23(c)(2) ............................................................................... 21

Fed. R. Civ. P. 23(g)(1)(A)(i–iv) ................................................................. 22

Fed. R. Civ. P. 23(g)(1)(B) .......................................................................... 22

**Other Authorities**

1 Newberg on Class Actions § 3:3 (5th ed.) ................................................. 12

Fed. Prac. and Proc. § 1777, p. 518–19 (2d ed. 1986) .................................. 12

Manual for Complex Litigation (Fourth), § 21.632 .......................................... 9

## I.   INTRODUCTION

Plaintiffs Michelle Anderson, Saray Hendricks, Peter Telford, Hulises Rolon, Denise Bowen, Bryan Bowen, Gerardo Rivera, Mark Johnson, ("2022 Data Incident Plaintiffs") and Ariana Allen (collectively with 2022 Data Incident Plaintiffs, "Plaintiffs"), respectfully submit this Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support. Defendant U-Haul International, Inc., ("U-Haul" or "Defendant" and together with Plaintiffs, the "Parties") has reviewed this filing and does not oppose this Motion. A copy of the Settlement Agreement and its exhibits are attached as **Exhibit 1**. The Settlement is fair, reasonable and adequate, warranting preliminary approval and that notice should be distributed to Class Members.

## II.   STATEMENT OF FACTS

In August 2022, U-Haul became aware that from November 5, 2021, until April 5, 2022, an unauthorized actor potentially gained access to certain systems and potentially accessed certain information stored within those systems (the "2022 Data Incident"). ECF 49, ¶ 38. U-Haul began notifying 2022 Data Incident Plaintiffs and the Settlement Class about the 2022 Data Incident in September 2022. *Id*.

Separately, on December 5, 2023, U-Haul became aware that an unauthorized actor gained access to certain systems and accessed certain customer records stored within those systems (the "2023 Data Incident," collectively with the 2022 Data Incident the "Data Incidents"). *Id*. ¶ 49. U-Haul began notifying 2023 Data Incident plaintiffs, including Plaintiff Ariana Allen ("Plaintiff Allen"), about the 2023 Data Incident on or about February 22, 2024. *Id*. Both the 2022 Data Incident and 2022 Data Incident involved Settlement Class Members' Personally Identifiable Information ("PII"), including names, dates of birth, and driver's license numbers. *Id*. ¶¶ 38, 49.

## III.   PROCEDURAL HISTORY

On September 15, 2022, Plaintiff Felicia Durgan filed a class action complaint against U-Haul alleging various claims arising from the 2022 Data Incident. ECF 1. On September 22, 2022, Plaintiff Bagley filed a class action complaint against U-Haul arising

from the same data incident and virtually identical claims as the *Durgan* suit. The same day, Plaintiff Laventure filed Case 2:22-cv-01565-MTL, a class action complaint against U-Haul arising from the 2022 Data Incident and claims identical to those asserted in the *Durgan* suit. On September 23, 2022, Plaintiff Tooker filed a class action complaint against U-Haul arising from the 2022 Data Incident and virtually identical claims as the *Durgan* suit. On September 29, 2022, Plaintiff Brown filed a class action complaint against U-Haul asserting virtually identical facts arising from the 2022 Data Incident and virtually identical claims as the *Durgan* suit. On October 5, 2022, Plaintiffs Cartwright and Emery filed a class action complaint against U-Haul asserting virtually identical facts arising from the 2022 Data Incident and virtually identical claims as the *Durgan* suit. Additionally, the Related Actions advance various theories of liability, among other various claims, including the following causes of action: (i) negligence, (ii) breach of implied contract; (iii) unjust enrichment; and (iv) Violations of the Drivers' Privacy Protection Act, 18 U.S.C. § 2721, *et seq.* On October 28, 2022, this Court granted Plaintiffs' Motion and consolidated all actions into the *Durgan* Action (ECF 13), and on December 19, 2022, Plaintiffs filed their Consolidated Class Action Complaint. ECF 16.

On January 30, 2023, Defendant filed a Motion to Dismiss alleging Plaintiffs failed to state a claim upon which relief could be granted. ECF 22. This Court granted Defendant's motion in part and denied it in part, and ultimately allowed Plaintiffs leave to amend their complaint. ECF 31. On August 10, 2023, Plaintiffs filed their First Amended Consolidated Complaint. ECF 33. Defendant filed a Motion to Dismiss Plaintiffs' First Amended Consolidated Complaint on August 24, 2023. ECF 34. On October 23, 2023, this Court granted dismissal as to Plaintiffs' claims for negligence, breach of implied contract, and violation of the Arizona Consumer Fraud Act, and denied the Motion as to Plaintiffs' claim under the California Consumer Privacy Act ("CCPA"). ECF 39. On May 8, 2024, Plaintiffs (including Plaintiff Ariana Allen) filed their Second Amended Consolidated Complaint adding allegations relating to the 2023 Data Incident.

Following months of extensive, arm's length negotiations including under the

guidance of an experienced mediator, the Parties agreed to the terms of the Settlement in principle. Declaration of Terence R. Coates ("Coates Preliminary Approval Decl.," attached hereto as **Exhibit 2**), ¶¶ 10-13. The Parties then took several months to finalize the full scope of the Settlement Agreement and executed the same on April 30, 2024. *Id*. ¶ 12.

## IV.   THE SETTLEMENT TERMS

### A.   Proposed Settlement Class

The Settlement will provide relief for the following Settlement Class: "All individuals who resided in California at any time during, and whose PII was compromised in, the data incident that is subject of the *Notice of Recent Security Incident* that Defendant sent to Plaintiffs and 2022 Data Incident plaintiffs on or around September 9, 2022 and the data security incident that is subject of the *Notice of Recent Security Incident* that Defendant sent to Plaintiff Allen and 2023 Data Incident plaintiffs on or around February 22, 2024." Settlement Agreement ("S.A.") § 1.43.

Any Settlement Class Member whose Private Information was involved in the 2022 Data Incident and/or 2023 Data Incident will be eligible to receive up to two *Pro Rata* Monetary Payments under this Settlement (one for each Data Incident). S.A. § 3.1. There are approximately 2,458 Settlement Class Members whose PII was involved in both the 2022 Data Incident and the 2023 Data Incident. S.A. § 1.43.

There are roughly 248,000 Settlement Class Members whose PII was involved in the 2022 Data Incident and roughly 13,889 Settlement Class Members whose PII was included in the 2023 Data Incident. *Id*. Since 2,458 Settlement Class Members are included in both of those numbers (as their data was implicated in both incidents), the aggregate number of Class Members is approximately 259,000 (248,000 plus 13,889 minus 2,458 to ensure those Class Members are not counted twice). *Id*.

### B.  Settlement Benefits

The Settlement provides for the following benefits:

### 1.  The Settlement Fund

Under the Settlement Agreement, U-Haul shall fund a non-reversionary Settlement Fund ("Settlement Fund") in the amount of five million eighty-five thousand dollars ($5,085,000). S.A. § 1.44; *id.* § 3. The Settlement Fund shall be used to cover Notice and Settlement Administration Costs, all valid Claims, and Class Representative Awards to the Class Representatives, and any attorneys' fees and expenses to Class Counsel and Plaintiffs' Counsel. S.A. § 3.

a)   *Pro Rata* Monetary Payment: All Settlement Class Members may claim a *pro rata* monetary payment that is estimated to be approximately $100 from the Settlement Fund. The P*ro Rata* Monetary Payment will be calculated by dividing the amount available from the Settlement Fund after the deduction of any Notice and Settlement Administration Costs, attorneys' fees, litigation expenses, and Service Awards, by the number of Settlement Class Members who submit valid claims. S.A. § 3.1. Any Settlement Class Member whose PII was involved in the 2022 Data Incident and 2023 Data Incident will be eligible to receive two *Pro Rata* Monetary Payments under this Settlement (one for each Data Incident). S.A. § 1.43.

b)   *Cy Pres* Recipient: If any monies remain in the Settlement Fund more than one hundred twenty (120) Days after the distribution of *Pro Rata* Monetary Payments to Settlement Class Members who have submitted valid Claim Forms, such funds with be Residual Funds under this Agreement and will be distributed to the International Association of Privacy Professionals Student Scholarship Fund, a 501(c)(6) organization that provides education and awareness of data privacy issues, as *cy pres* recipient, subject to court approval. S.A. § 3.1. Given that all the net Settlement funds will be distributed to Class Members making valid claims on a *pro rata* basis, it is anticipated that any *cy pres* award will be limited to uncashed checks or unnegotiated electronic payments.

### 2.  Remedial Measures

Separate from and in addition to the Settlement Fund, Defendant agrees to provide written confirmation to Plaintiffs' Counsel of subsequent remedial measures taken after the 2022 Data Incident and the 2023 Data Incident to protect the continuing interests of Plaintiffs' and Settlement Class Members' data security. Costs associated with these data security measures shall be paid by Defendant separately from the Settlement Amount. S.A. § 3.2.

### 3.  Class Notice and Settlement Administration

Notice will be given to the Settlement Class via individual direct notice by emailing and/or by mailing via U.S. Mail the Short-Form notice (attached to the Settlement Agreement as Exhibit A) to Settlement Class Members whose mailing addresses are known to U-Haul. S.A. § 5.4.

The Long Form Notice (attached to Settlement Agreement as Exhibit B), will also be posted on the Settlement Website, along with other important documents such as the Settlement Agreement and the motions for final approval and for attorneys' fees and expenses. S.A. § 5.7. The notice documents are clear and concise and directly apprise Class Members of all the information they need to know to make a claim or to opt-out or object to the Settlement. Fed. R. Civ. P. 23(c)(2)(B).

Moreover, Kroll Settlement Administration, LLC ("Kroll"), a nationally recognized and well-regarded class action settlement administrator, has been selected to serve as Settlement Administrator, subject to the Court's approval. *See* S.A. § 1.41.; *see also* Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC in Connection with Preliminary Approval of Settlement, ¶¶ 1-2, 5 (attached as **Exhibit 3**).

### 4.  Attorneys' Fees and Expenses

Under the Settlement Agreement, Plaintiffs will seek an award of attorneys' fees not to exceed 30% of the Settlement Fund, or $1,525,500.00, as well as reimbursement of Class Counsel's reasonable out-of-pocket costs and litigation expenses actually incurred up to seventy thousand dollars ($70,000.00).

Class Counsel's fee request is well within the range of reasonableness for Settlements of this nature and size. The Ninth Circuit has found attorneys' fees awards of 1/3 of the fund to be reasonable. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of total recovery); *see also Avila v. LifeLock Inc.*, No. 2:25-cv-01398, 2020 WL 4362394, at *1 (D. Ariz. July 27, 2020) (awarding attorneys' fees of $6,000,00 consisting of 30% of the settlement fund). Plaintiffs and Class Counsel will submit a robust motion supporting the fee request. S.A. § 8.3.

### 5.  Class Representative Service Awards

Plaintiffs have been actively involved in the pursuit of this case, have been integral in achieving the Settlement Fund, and support the Settlement. Coates Preliminary Approval Decl., ¶ 23. Plaintiffs will separately petition the Court for service awards of $2,000 each in recognition of the time, effort, and expense they incurred pursuing claims that benefited the Settlement Class. *See* S.A. § 8.1.

The amount requested here is presumptively reasonable and less than commonly awarded in settled class action cases. *See, e.g.*, *Pauley v. CF Entm't*, No. 1:13-CV-08011, 2020 WL 5809953, at *3 (C.D. Cal. July 23, 2020) (This Court granted "class representative enhancement fees in the amount of $5,000 each to Plaintiffs," finding that amount to be "presumptively reasonable"); *In re Yahoo Mail Litig.*, No. 13-CV-4980, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) ("The Ninth Circuit has established $5,000.00 as a reasonable benchmark [for service awards]."); *Garrett v. Advantage Plus Credit Reporting Inc.*, No. CV-21-02082, 2024 WL 1603442, at *6 (D. Ariz. Apr. 12, 2024) ($5,000 service award); *Griffey v. Magellan Health Inc.*, No. 2:20-cv-01282, Dkt. 114, ¶ 20 (D. Ariz. Feb. 9, 2024) ($5,000 and $1,5000 service awards).

### 6.  Release

On the Effective Date, Plaintiffs and the Settlement Class will be deemed to have "fully, finally, and forever released, relinquished, and discharged all Released Claims." S.A. § 13.3. "Released Claims" are defined, *inter alia*, as:

   any and all claims, demands, rights, or causes of action of any type or nature

whether legal, equitable, statutory, based on the common law, or otherwise, whether individual, class, direct, representative or otherwise, for damages, losses, penalties, attorney's fees, or any other type of remedy or relief be it monetary or injunctive, existing or potential, accrued or unaccrued, suspected or unsuspected, that were asserted in the Litigation Complaint or are reasonably related to the facts and claims alleged in the Litigation, including any Unknown Claims. Released Claims shall not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement and shall not include the claims of members of the Settlement Class Members who have timely excluded themselves from the Settlement Class.

S.A. § 1.36.

## V.   LEGAL AUTHORITY

Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which court approval is required to finalize a class action settlement. Courts, including those in this Circuit, endorse a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement followed by (2) dissemination of court-approved notice to the class and (3) a final fairness hearing at which class members may be heard regarding the settlement and at which evidence may be heard regarding the fairness, adequacy, and reasonableness of the settlement. *Manual for Complex Litigation (Fourth)* (2004) § 21.63.

Here, Plaintiffs request the Court take the first step, and grant preliminary approval of the proposed Settlement Agreement.

## VI.   ARGUMENT

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). More traditional means of handling claims like those at issue here—individual litigation—would unduly tax the court system, require massive

expenditures of resources, and given the relatively small value of the claims of the individual class members, would be impracticable. Thus, a settlement—and specifically the Settlement Agreement proposed here—provides the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The Manual for Complex Litigation (Fourth) advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." § 21.632. Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* Other certification issues, however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions," require heightened scrutiny in the settlement-only context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.* Plaintiffs here seek certification of a Settlement Class consisting of:

> **All individuals who resided in California at any time during, and whose PII was compromised in, the data incident that is the subject of *Notice of Recent Security Incident* that Defendant sent to Plaintiffs and Settlement Class members on or around September 9, 2022 and the data incident that is the subject of the Notice of Recent Security Incident that Defendant sent to Plaintiff Allen and 2023 Data Incident plaintiffs on or around February 22, 2024, respectively (the "Settlement Class"). Excluded from the Settlement Class are: (i) U-Haul, Inc.; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Security Incidents or who pleads nolo contendere to any such charge.**

S.A. § 1.43.

1    For the reasons set forth below, the Court should certify the Class for settlement

2    purposes and grant preliminary approval of the Settlement. Any Settlement Class Member

3    whose PII was involved in the 2022 Data Incident and/or 2023 Data Incident will be

4    eligible to receive up to two *Pro Rata* Monetary Payments under this Settlement (one for

5    each Data Incident to the extent their PII was involved in both Data Incidents).

6    **A. The Settlement Satisfies Rule 23(a).**

7    Before assessing the parties' settlement, the Court should first confirm the

8    underlying settlement class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S.

9    at 620; *Manual for Complex Litigation (Fourth)*, § 21.632. The requirements are well

10   known: numerosity, commonality, typicality, and adequacy—each of which is met here.

11   Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 979–80 (9th Cir.

12   2011).

13   **1. The Proposed Class is Sufficiently Numerous.**

14   While there is no fixed point where the numerosity requirement is met, Courts find

15   numerosity where there are so many class members as to make joinder impracticable. *See*

16   Fed. R. Civ. P. 23(a)(1). "Where the exact size of the class is unknown but general

17   knowledge and common sense indicate that it is large, the numerosity requirement is

18   satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982).

19   Generally, Courts will find numerosity is satisfied where a class includes at least 40

20   members. *Holly v. Alta Newport Hosp., Inc.*, 612 F. Supp. 3d 1017, 1027 (C.D. Cal. 2020)

21   (*citing Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010)). As shown above, there

22   are roughly 259,431 Settlement Class Members. Accordingly, the proposed settlement

23   class easily satisfies Rule 23's numerosity requirement. Joinder of the individuals is

24   clearly impracticable—thus the numerosity prong is satisfied. *See, e.g. Celano v. Marriott*

25   *Int'l Inc*., 242 F.R.D. 544, 548–49 (N.D. Cal. 2007) (numerosity is generally satisfied

26   when a class has at least 40 members).

27

28

### 2.   The Settlement Class Satisfies the Commonality Requirement.

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues all center on [Defendant's] conduct, satisfying the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig*., No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). Thus, common questions include, *inter alia*, whether U-Haul engaged in the wrongful conduct alleged; whether Class Members' PII was compromised in the Data Incidents; whether U-Haul owed a duty to Plaintiffs and Class members; whether U-Haul breached its duties; and whether U-Haul violated California's Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et seq.* ("CCPA") as alleged in the Second Amended Consolidated Complaint. These questions are the same across the Settlement Class, as U-Haul's policies and procedures relating to Data Security remained consistent throughout the time period encompassing both the 2022 Data Incident and the 2023 Data Incident. *See Guy v. Convergent Outsourcing, Inc.*, No. C22-1558 MJP, 2023 WL 8778166, at *3 (W.D. Wash. Dec. 19, 2023) (allegations regarding defendant's "failure to safeguard their PII consistent with industry standards" satisfied commonality).

Thus, Plaintiffs have met the commonality requirement of Rule 23(a).

### 3.   Plaintiffs' Claims and Defenses Are Typical of Those of the Settlement Class.

Plaintiffs satisfy the typicality requirement of Rule 23 because Plaintiffs' claims, which are based on Defendant's alleged failure to protect the PII of Plaintiffs and all members of the Class, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v Portfolio Recovery Associates*, 707 F.3d 943, 1041–42 (9th Cir. 2012) (upholding typicality finding). Plaintiffs allege their PII was compromised, and that they were therefore impacted by the same allegedly inadequate

data security that they allege harmed the rest of the Settlement Class. *See Convergent Outsourcing*, 2023 WL 8778166, at *3 (finding allegations that personal information was compromised in data breach satisfied typicality requirement); *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

### 4.  Plaintiffs Will Adequately Protect the Interests of the Class.

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 325 (C.D. Cal. 2015).

Here, Plaintiffs have no conflicts of interest with other class members, are subject to no unique defenses, and they and their counsel have vigorously prosecuted this case on behalf of the class, and continue to do so. Plaintiffs are members of the Class who allegedly experienced the same injuries and seek, like other Class Members, compensation for U-Haul's alleged data security shortcomings. As such, their interests and the interests of their counsel are consistent with those of other Class Members. The group of Plaintiffs contains individuals whose PII was compromised in both the 2022 Data Incident and the 2023 Data Incident, ensuring that the interests of all Settlement Class Members are adequately represented, a fact further evidenced by the ability of any Settlement Class Member whose PII was compromised in both Data Incidents to make a claim for compensation for both instances, without any type of reduction in the value of either claim.

Further, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate for the Class. *See* Coates Preliminary Approval Dec. ¶¶ 3-5, 26. Thus, Plaintiffs satisfy the requirement of adequacy.

### 5.  The Class is Ascertainable.

Rule 23 also requires, at least implicitly, that the members of the proposed class be objectively ascertainable. *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc*., 65 F. Supp. 3d 1046, 1064 (D. Or. 2014). A proposed class must be "precise, objective, [and] presently ascertainable." *See Williams v. Oberon Media, Inc*., 468 F. App'x 768, 770 (9th Cir. 2012) (quotation marks omitted) (alteration added). Class members must be identifiable through "a manageable process that does not require much, if any, individual factual inquiry." *Lilly v. Jamba Juice Co*., 308 F.R.D. 231, 237 (N.D. Cal. 2014) (quoting William B. Rubenstein, 1 Newberg on Class Actions § 3:3 (5th ed.)). This requirement does not entail, however, that "every potential member . . . be identified at the commencement of the action." *Id.* (quotation marks omitted) (emphasis added). The purported class members have been identified through U-Haul's records.

### B.  The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement.

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, Plaintiffs allege that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Id.*

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citing Wright, et al., Fed. Prac. and Proc. § 1777, p. 518–19 (2d ed. 1986)). "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied." *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012) (quoting *Hanlon*, 150 F.3d at 1022). To satisfy this requirement, "common issues need

only predominate, not outnumber individual issues." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quotations omitted).

As discussed above, Plaintiffs allege that common questions predominate in this case over any questions affecting only individual members.  Plaintiffs' claims depend, first and foremost, on whether U-Haul used reasonable data security measures to protect consumers' PII. Importantly, U-Haul's data security procedures remained the same throughout the Data Incidents and these questions can be resolved, for purposes of settlement only, using the same evidence for all Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) [.]'") (citation omitted).

Additionally, for purposes of settlement, a class action is the superior method of adjudicating consumer claims arising from the Data Incidents—just as in other data breach cases where class-wide settlements have been approved. *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019); *Parsons v. Kimpton Hotel & Rest. Group, LLC*, No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316–17 (N.D. Cal. 2018); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015).  Adjudicating individual actions here is impracticable:  the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See Just Film*, 847 F.3d at 1123.

Also, because Plaintiffs seek to certify a class in the context of a settlement only, this Court need not consider any possible management-related problems as it otherwise would. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

In any event, no one member of the class has an interest in controlling the prosecution of this action because Plaintiffs' claims and the claims of the members of the class are the same. Alternatives to a class action are either no recourse for hundreds of thousands of individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice. Class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. There are hundreds of thousands of class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). A class action is therefore superior to other methods for the fair and efficient adjudication of the claims of Plaintiffs and the Class.

**C. The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e).**

"[U]nder Rule 23(e)(1), the issue at preliminary approval turns on whether the Court 'will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *Reyes v. Experian Info. Sols., Inc.*, No. SACV1600563AGAFMX, 2020 WL 466638, at *1 (C.D. Cal. Jan. 27, 2020). Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or compromised only with the court's approval." Moreover, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." If the parties make a sufficient showing that the Court will likely be able to "approve the proposal" and "certify the class for purposes of judgment on the proposal," "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). Thus, notice should be given to

the class, and hence preliminary approval should be granted, where the Court "will likely be able to" finally approve the settlement under Rule 23(e)(2) and certify the class for settlement purposes. *Id.*

"In evaluating a proposed settlement at the preliminary approval stage, some district courts . . . have stated that the relevant inquiry is whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness.'" *Bykov v. DC Trans. Services, Inc.*, No. 2:18-cv-1692 DB, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019). That is, "preliminary approval of a settlement has both a procedural and a substantive component." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). As to the procedural component, "a presumption of fairness applies when settlements are negotiated at arm's length, because of the decreased chance of collusion between the negotiating parties." *Gribble v. Cool Transports Inc.*, No. CV 06-4863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008). Likewise, "participation in mediation tends to support the conclusion that the settlement process was not collusive." *Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*, 303 F.R.D. 337, 350 (E.D. Cal. 2014). With respect to the substantive component, "[a]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010) (*quoting Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

In sum, "the purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). To that end, the Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6)

the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and, (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon*, 150 F.3d at 1026. Rule 23(e) requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. *See Franklin v. Kaypro Corp*., 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits."). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### 1. The Strength of Plaintiffs' Case

Plaintiffs believe they have built a strong case for liability. Plaintiffs believe their claims are viable and that they have a good chance of proving that U-Haul's data security was inadequate and that, if they establish that central fact, Defendant is likely to be found liable for violation of the CCPA as Plaintiffs pled in their Second Amended Consolidated Complaint. While Plaintiffs believe they have strong claims and would be able to prevail, their success is not guaranteed. It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co*., No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos*., No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the heavy obstacles and inherent risks Plaintiffs face with respect to the novel claims in data breach

class actions, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides favors preliminary approval of the Settlement. Coates Preliminary Approval Decl., ¶ 27.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiffs are confident in their remaining claim, all cases, including this one, are subject to substantial risk. This case involves a proposed class of approximately 2,458 Settlement Class Members whose PII was involved in the 2022 Data Incident and the 2023 Data Incident, 248,000 Settlement Class Members whose PII was involved in the 2022 Data Incident and roughly 13,889 Settlement Class Members whose PII was included in the 2023 Data Incident, each of whom would need to establish cognizable harm and causation, and a complicated and technical factual background. As this Court is aware, Defendant has already successfully moved to dismiss the bulk of Plaintiffs' claims, which further demonstrates the very real litigation risks attendant here.

Although nearly all class actions involve a high level of risk, expense, and complexity—"[t]hese general risks are heightened in data breach cases like this one." *Carter v. Vivendi Ticketing US LLC*, No. 2022-01981-CJC, 2023 WL 8153712, at \*6 (C.D. Cal. Oct. 30, 2023); *see also Gaston v. FabFitFun, Inc.*, No. 2:20-cv-09534, 2021 WL 6496734, at \*3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."). This case is no different in that it would present risk at class certification with no guarantee that the Court would certify Plaintiffs' proposed Class. "Accordingly, this factor favors approval.

### 3. The Risk of Maintaining Class Action Status Through Trial

As noted above, Plaintiffs would encounter risks in obtaining and maintaining class certification. Class certification in contested consumer data breach cases is not common— first occurring in *Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 WL 1044692, at \*15-16 (M.D. Ala. Mar. 17, 2017). In a recent data breach case where classes were contested but ultimately certified, *In re Marriott Int'l Customer Data Security*

*Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022), the classes were decertified on appeal. *See In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023).[1] The relative absence of trial class certification precedent in the relatively novel data breach setting adds to the risks posed by continued litigation.

### 4.  The Amount Offered in Settlement

The Settlement makes significant relief available to Settlement Class Members in the form of cash payments. The amount of compensation per Class Member is substantial. The *Pro Rata* Monetary Payment to Class Members will be calculated according to the Settlement Agreement, but is estimated by the Parties, based on their significant experience with settlements of this nature, that it will be approximately $100 per Class Member. Coates Preliminary Approval Decl. ¶ 15. This Settlement is a solid result for the Class with its value per class member here is on par with or exceeding that in other data breach settlements.[2] Because the Settlement amount here is similar to other settlements reached and approved in similar cases, this factor reflects that the Settlement is fair. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7–8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). Accordingly, this factor favors approval.

---

[1] The classes were then re-certified by the district court on remand. *See In re Marriott Int'l Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2023 WL 8247865, at *1 (D. Md. Nov. 29, 2023).

[2] *See, e.g. Dickey's Barbeque Restaurants, Inc.*, No. 20-cv-3424 (N.D. Tex.), Dkt. 62 (data breach class action involving more than 3 million people that settled for $2.3 million, or $0.76 per person); *Cochran v. Accellion, Inc.*, No. 5:21-cv-01887-EJD (N.D. Cal.), ECF No. 32 (June 30, 2021) ($5 million settlement fund for 3.82 million class members or approximately $1.31 per class member); *In re Anthem, Inc. Data Breach Litig.*, No. 5:15-md-02617 (N.D. Cal. Aug. 15, 2018) ($115 million settlement in medical information data breach for 79,200,000 Class Members; $1.45 per Class Member); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522, 2017 WL 2178306, at *1- 2 (D. Minn. May 17, 2017) ($10 million settlement for nearly 100 million Class Members; 10 cents per Class Member); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) ($1.25 million settlement for approximately 6.4 million class members; 20 cents per class member).

### 5.  The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Here, Plaintiffs gathered all the information that was available regarding U-Haul and the Data Incidents including publicly-available documents regarding the Data Incidents. Coates Preliminary Approval Decl., ¶ 10. The Parties also informally exchanged non-public information concerning the Data Incidents and the Class size in preparation for mediation. *Id.* During the settlement negotiations, the Parties exchanged informal discovery to the point where "the parties have sufficient information to make an informed decision about settlement," including the strengths and weakness of their respective cases. *See Linney*, 151 F.3d at 1239.

Class Counsel's extensive experience with representing plaintiffs in data privacy class actions assisted Plaintiffs in efficiently litigation this matter on behalf of the Class. Coates Preliminary Approval Decl., ¶ 26. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017). Accordingly, Plaintiffs are well-informed about the strengths and weaknesses of this case.

### 6.  The Experience and Views of Counsel

Class Counsel initiated this lawsuit when U-Haul announced the 2022 Data Incident, which, based upon publicly available information, potentially impacted approximately 248,000 customers. The 2023 Data Incident impacted roughly 14,000 customers. Having worked on behalf of the putative class since the Data Incidents were first announced, evaluated the legal and factual issues presented in this case, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully endorses the Settlement. *Id.* ¶¶ 25-27. Courts "afford great weight to the recommendation of counsel with respect to the settlement because counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."

*Bloom v. City of San Diego*, No. 17-cv-02324, 2024 WL 1162103, at *4 (S.D. Cal. Mar. 18, 2024) (Internal citation omitted); *Kastler v. Oh My Green*, No. 19-cv-02411, 2022 WL 1157492, at *4 (N.D. Cal. Apr. 19, 2022) ("Courts may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement considering Plaintiff's likelihood of recovery.") (Internal citation and quotation omitted). Accordingly, this factor supports approval.

### 7. Governmental Participants.

There is no governmental participant in this matter. This factor is neutral.

### 8. The Reaction of the Class Members to the Proposed Settlement

The Class Representatives fully support this Settlement, yet this factor is neutral given that notice because notice has not been issued to the Class informing Class Members about the Settlement. Coates Preliminary Approval Decl., ¶ 23.

### 9. Lack of Collusion Among the Parties

The Parties negotiated a substantial Settlement Fund. Class Counsel and U-Haul's counsel are experienced in handling data breach class actions such as this one and fully understand the values recovered in similar cases. Coates Preliminary Approval ¶ 10. The terms of the Settlement were negotiated at arm's length and included a full-day mediation under the guidance of the mediator Bennett G. Picker, Esq., who has considerable experience in mediating data breach class actions, and who is considered one of the top mediators in the country for data breach cases. *Id.* ¶¶ 11-12. The negotiations continued for months after the formal mediation, with Mr. Picker overseeing the negotiations, and working tirelessly to move the Parties towards settlement. The negotiations were vigorously contested, were overseen by Mr. Picker, and were non-collusive. *Bloom*, 2024 WL 1162103, at *4 (noting "that "the settlement was reached with the assistance of an experienced mediatory further suggests that the settlement if fair and reasonable.").

### 10. The Settlement Treats Settlement Class Members Equitably

Finally, Rule 23(e)(2)(D) requires that the settlement treats all class members as equitably as possible under the circumstances. In determining whether this factor weighs

in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Technology Inc.*, No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, *9 (S.D. Cal. May 13, 2020) (*quoting In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). Here, the Settlement treats all Class Members equitably, taking into account the difference between Class Members who potentially had their PII compromised in both the 2022 Data Incident and the 2023 Data Incident as opposed to those who only had their PII compromised in one instance. Each and every Class Member has the opportunity to make a claim for a *Pro Rata* Monetary Payment, estimated to be $100. While Plaintiffs have been permitted to seek approval of service awards from this Court, as will be explained in detail in Plaintiffs' Motion for Attorneys' Fees, Expenses and Class Representative Service Awards, the contemplated Service Awards of $2,000 per Class Representative are in line with awards granted in similar cases, is presumptively reasonable, and do not call into question Plaintiffs' adequacy or the validity of the Settlement. Accordingly, this factor also weighs in favor of approval.

### D. The Court Should Approve the Proposed Notice Program

Rule 23 requires that before final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). "The notice may be by one or more of the following:  United States mail, electronic means, or other appropriate means." *Id.*

Notice to class members must apprise interested parties of the pendency of the action and afford them an opportunity to potentially object to the settlement. Fed. R. Civ. P. 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Here, and after a competitive bid process, the Parties agreed to a robust notice program to be administered by an experienced third-party settlement administrator—Kroll—which will use all reasonable efforts to provide direct notice to each potential Settlement Class Member via direct U.S. mail and/or email. Kroll Decl. ¶ 15. Notice and Settlement Administration Costs will be paid from the Settlement Fund. S.A. § 1.19, 4. The Settlement Administrator

will also establish a dedicated Settlement Website that will contain the Short Notice, Long Notice, and Claim Form. S.A. § 4.4. Kroll confirms that the notice plan here of issuing notice to Class Members via regular U.S. Mail and/or email satisfies due process and will likely reach 90% of the Setltmeent Class. Kroll Decl., ¶ 15.

Accordingly, the Notice plan should be approved.

### E.  Appointment of the Settlement Administrator

The Parties request that the Court appoint Kroll to serve as the Settlement Administrator. "Kroll has extensive experience in class action matters," including having "provided class action services in over 3,000 settlements varying in size and complexity over the past 50 years." Kroll Decl., ¶ 2.

### F.  Appointment of Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Here, proposed Class Counsel has extensive experience prosecuting class actions data privacy class action case. *See* Class Counsel Decl. ¶ 3-5, 26. Accordingly, the Court should appoint Terence R. Coates of Markovits, Stock & DeMarco, LLC as Class Counsel.

## VII. CONCLUSION

The $5,085,000 Settlement for roughly 259,000 Class Members is a substantial recovery for the Class. Accordingly, Plaintiffs respectfully request this Court to grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement because the Settlement is fair, reasonable, and adequate. A copy of the Proposed Order Granting Preliminary Approval of Class Action Settlement is also submitted herewith for the Court's consideration.

Date: May 23, 2024.

Respectfully submitted,

*/s/ Cristina Perez Hesano*
Cristina Perez Hesano (#027023)
*cperez@perezlawgroup.com*
**PEREZ LAW GROUP, PLLC**
7508 N. 59th Avenue
Glendale, AZ 85301
Telephone: (602) 730-7100
Facsimile: (623) 235-6173

Terence R. Coates (admitted *pro hac vice*)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 665-0204
Facsimile: (513) 665-0219
tcoates@msdlegal.com

*Proposed Class Counsel for Plaintiffs and the
Proposed Settlement Class*