Cristina Perez Hesano (#027023)
*cperez@perezlawgroup.com*
**PEREZ LAW GROUP, PLLC**
7508 N. 59th Avenue
Glendale, AZ 85301
Telephone: (602) 730-7100
Facsimile: (623) 235-6173

*Attorneys for Plaintiffs and the
Proposed Class*

*[Additional counsel on signature page]*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Michelle Anderson; Saray Hendricks; Peter Telford; Hulises Rolon; Denise Bowen; Bryan Bowen; Mark Johnson; Gerardo Rivera; and Ariana Allen, individually and on behalf of all others similarly situated, | Lead Case No. CV-22-01565-PHX-MTL Consolidated with: Case No.: 2:22-cv-01608; Case No.: 2:22-cv-01625; Case No.: 2:22-cv-01631; Case No.: 2:22-cv-01658; Case No.: 2:22-cv-01693. |
| Plaintiffs, | |
| v. | |
| U-Haul International, Incorporated, | **PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| Defendant. | |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. iv

I.  INTRODUCTION ................................................................................... 1

II. INCORPORATION BY REFERENCE ..................................................... 1

III. STATEMENT OF FACTS AND PROCEDURAL HISTORY ................... 1

IV. THE SETTLEMENT TERMS .................................................................. 2

    A.  Proposed Settlement Class ............................................................ 2

    B.  Settlement Benefits ....................................................................... 3

        1.  The Settlement Fund .......................................................... 3

        2.  Class Notice and Settlement Administration ..................... 3

        3.  Attorneys' Fees, Expenses, and Service Awards .............. 3

V.  LEGAL STANDARD .............................................................................. 4

VI. ARGUMENT ........................................................................................... 5

    A.  The Class Was Adequately Represented ....................................... 5

    B.  The Settlement was Negotiated at Arm's Length .......................... 6

    C.  The Relief is Adequate .................................................................. 7

        1.  The Costs, Risk, and Delay of Trial and Appeal .............. 7

        2.  The Method of Distributing Relief is Effective ................ 7

        3.  The Terms Relating to Attorneys' Fees Are Reasonable ... 8

        4.  Any Agreement Required to be Identified

            Under Rule 23(e)(3) ........................................................... 8

    D.  The Proposed Settlement Treats Class Members Equitably ......... 8

    E.  There is No Opposition to the Settlement ..................................... 8

    F.  The *Bluetooth* Factors Are Similarly Satisfied ........................... 9

        1.  The Strength of Plaintiffs' Case ........................................ 9

        2.  The Risk, Expense, Complexity, and Likely Duration

            of Further Litigation ........................................................... 9

3. The Risk of Maintaining Class Action Status Through Trial ................................................................................. 11

4. The Amount Offered in Settlement .................................................. 11

5. The Extent of Discovery Completed and the Stage of Proceedings ................................................................................. 11

6. The Experience and Views of Counsel ........................................... 12

7. Governmental Participants ............................................................... 12

8. The Positive Reaction of the Class Members Favors Final Approval ................................................................................. 12

9. Lack of Collusion Among the Parties ............................................. 13

VII. NOTICE WAS PROVIDED ACCORDING TO THE PRELIMINARY APPROVAL ORDER AND SATISFIED DUE PROCESS AND RULE 23 ........ 13

VIII. CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Billittri v. Securities America, Inc.*,
  Nos. 3:09-cv-01568-F, 3:10-cv-01833-F,
  2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) .............................................................. 14

*Brown v. Transurban USA, Inc.*,
  318 F.R.D. 560 (E.D. Va. 2016) ...................................................................................... 5

*Chester v. TJX Cos.*,
  No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788 (C.D. Cal. Dec. 5, 2017)............ 9

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ......................................................................................... 5

*Cohorst v. BRE Props.*,
  No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923 (S.D. Cal. Nov. 9, 2011) .................. 6

*Dennis v. Kellogg Co.*,
  No. 09-cv-1786-L(WMc), 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013)..................... 9

*Espinosa v. United Student Aid Funds, Inc.*,
  553 F.3d 1193 (9th Cir. 2008) ....................................................................................... 14

*Fox v. Iowa Health Sys.*,
  No. 3:18-CV-00327-JDP, 2021 WL 826741 (W.D. Wis. Mar. 4, 2021) ..................... 10

*G. F. v. Contra Costa Cnty.*,
  No. 13-cv-03667-MEJ, 2015 WL 4606078 (N.D. Cal. July 30, 2015) ......................... 6

*G. F. v. Contra Costa Cnty.*,
  No. 13-cv-03667-MEJ, 2015 WL 7571789 (N.D. Cal. Nov. 25, 2015)........................ 13

*Gordon v. Chipotle Mexican Grill, Inc.*,
  No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) .............. 10

*Grimm v. American Eagle Airlines, Inc.*,
  No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376 (C.D. Cal. Sept. 24, 2014)... 11

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010).......... 10

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ........................................................................................... 5

iv

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
    266 F. Supp. 3d 1 (D.D.C. 2017) ................................................................ 10

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg.,*
    *Sales Practices & Prod. Liab. Litig.*,
    952 F.3d 471 (4th Cir. 2020) .......................................................................... 6

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) .................................................... 10, 11, 12

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)................................................................................. 13-14

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................... 7, 12, 13

*Norton v. Maximus, Inc.*,
    Civ. No. 1:14-0030 WBS, 2017 WL 1424636 (D. Idaho Apr. 17, 2017) ..................... 12

*Paz v. AG Adriano Goldschmeid, Inc.*,
    No. 14CV1372DMS(DHB), 2016 WL 4427439 (S.D. Cal. Feb. 29, 2016). ........... 10-11

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985).......................................................................................... 14

*Stott v. Capital Financial Services*,
    277 F.R.D. 316, (N.D. Tex. 2011) .............................................................. 14

*Wal-Mart Stores, Inc. v. Visa USA, Inc.*,
    396 F.3d 96 (2d Cir. 2005),
    *cert. denied, Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc.*,
    544 U.S. 1044 (2005).......................................................................................... 6

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................ 4

Fed. R. Civ. P. 23(b) ............................................................................................ 4

Fed. R. Civ. P. 23(c) ................................................................................... 14, 15

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................. 14

Fed. R. Civ. P. 23(c)(3) ..................................................................................... 14

Fed. R. Civ. P. 23(e) ........................................................................... 1, 4, 6, 14

Fed. R. Civ. P. 23(e)(2) ........................................................................... 4, 5, 6

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................ 7

Fed. R. Civ. P. 23(e)(2)(D) ................................................................................. 8

Fed. R. Civ. P. 23(e)(3) .................................................................................. 4, 8

**Other Authorities**

4 Newberg on Class Actions § 11.41 (4th ed. 2002) ........................................... 5

4 Newberg on Class Actions § 11:48 (4th ed. 2002) ......................................... 13

*Manual for Complex Litigation, Third* § 30.42 (1995) ...................................... 6

## I.    INTRODUCTION

Plaintiffs Michelle Anderson, Saray Hendricks, Peter Telford, Hulises Rolon, Denise Bowen, Bryan Bowen, Gerardo Rivera, Mark Johnson, ("2022 Data Incident Plaintiffs") and Ariana Allen (collectively with 2022 Data Incident Plaintiffs, "Plaintiffs"), submit this Unopposed Motion for Final Approval of Class Action Settlement and Memorandum in Support. Defendant U-Haul International, Inc., ("U-Haul" or "Defendant" and together with Plaintiffs, the "Parties") does not oppose Plaintiffs' request for final approval of class action settlement. The Court should grant final approval where the settlement is fair, reasonable, and adequate, notice met the requirements of Rule 23(e) and due process, the Class responded favorably, and where there is no opposition to this Settlement.

## II.    INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 52) and the accompanying Exhibits (including the Settlement Agreement) filed in conjunction therewith. (ECF 52-1 through 52-4). Plaintiffs also incorporate by reference Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards (ECF 56), filed on September 3, 2024.

## III.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

On June 17, 2024, this Court preliminarily approved the Settlement between Plaintiffs and Defendant and ordered that notice be given to the class. ECF 55. The Settlement creates a non-reversionary Settlement Fund ("Settlement Fund") in the amount of five million eighty-five thousand dollars ($5,085,000), providing immediate benefits to the Settlement Class. These benefits include pro rata cash payments and significant remedial measures by Defendant.

Plaintiffs and Class Counsel zealously litigated these Consolidated Actions for over two years now, achieving a favorable settlement providing substantial benefits for the approximately 260,000 Settlement Class Members. Class Counsel successfully

maintained this action in the face of multiple motions to dismiss. This demonstrated Class Counsel's substantial commitment to this complex, difficult, novel case.

The Parties reached this Settlement—providing meaningful benefits for the Settlement Class—only after an extensive investigation, hard-fought litigation, and arm's-length negotiations. Although Plaintiffs believe in the merits of their claims, U-Haul continues to contest the remaining claims that were not dismissed, and contentions alleged against it in the Litigation, including all charges of wrongdoing or liability. The claims involve the intricacies of data security litigation (a fast-developing area in the law), and Plaintiffs would face risks at each stage of litigation. Against these risks, Class Counsel and the Class Representatives believe that the Settlement achieved is for the benefit of the Settlement Class.

After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—disseminated Notice to the Settlement Class as set forth in the Settlement Agreement. Individual Notice was provided directly to Settlement Class Members via first class mail. Class Notice reached 98.77% of the Class, easily meeting the due process standard. *See* Declaration of Patrick Passarella, attached hereto as **Exhibit 1**, ¶ 14. The Notice was written in plain language, providing each Settlement Class Member with information regarding how to reach the Settlement Website, make a claim, and how to opt-out or object to the Settlement. *Id*. at Exhibits C, D. and F. Out of 257,141 Settlement Class Members who received a Postcard or Email Notice, only one (1) sought to be excluded from the Settlement, and none objected. *Id*. ¶ 19.

Plaintiffs now move the Court for final approval. The Settlement meets all the criteria for final approval. The Court should grant final approval and Plaintiffs' request for attorneys' fees, expenses, and service awards.

## IV. THE SETTLEMENT TERMS

### A. Proposed Settlement Class

The Settlement will provide relief for the following Settlement Class: "All individuals who resided in California at any time during, and whose PII was compromised

in, the data incident that is subject of the *Notice of Recent Security Incident* that Defendant sent to Plaintiffs and Settlement Class Members on or around September 9, 2022 and the data security incident that is subject of the *Notice of Recent Security Incident* that Defendant sent to Plaintiff Allen and Settlement Class Members on or around February 22, 2024." Settlement Agreement "S.A." § 1.42. There are roughly 260,000 Settlement Class Members.

### B.    Settlement Benefits

The Settlement provides for the following benefits:

### 1.    The Settlement Fund

Subject to the terms of this Settlement Agreement, U-Haul shall fund a non-reversionary Settlement Fund ("Settlement Fund") in the amount of $5,085,000. S.A. § 1.43. From the Fund, all Settlement Class Members may claim a *pro rata* monetary payment that is estimated to be approximately $100 from the Settlement Fund. Any Settlement Class Member whose Private Information was involved in the 2022 Data Incident and 2023 Data Incident will be eligible to receive two *Pro Rata* Monetary Payments under this Settlement (one for each Data Incident). S.A. § 1.42. Separate from and in addition to the Settlement Fund, Defendant has agreed to provide written confirmation to Plaintiffs' Counsel of subsequent remedial measures taken after the 2022 Data Incident and the 2023 Data Incident to protect the continuing interests of Plaintiffs' and Settlement Class Members' data security. Any costs associated with these data security measures shall be paid by Defendant separate and apart from the Settlement Amount. S.A. § 3.2.

### 2.    Class Notice and Settlement Administration

Kroll Settlement Administration, LLC ("Kroll") was appointed by the Court as the Settlement Administrator. Notice was given to the Settlement Class via individual direct notice. The cost of notice and administration will be paid for from the Settlement Fund.

### 3.    Attorneys' Fees, Expenses, and Service Awards

Pursuant to the Settlement Agreement Plaintiffs seek, and U-Haul did not oppose,

an award of attorneys' fees equaling 30% of the Settlement Fund, or $1,525,500.00, as well as reimbursement of $44,721.52 in reasonable out-of-pocket costs and litigation expenses actually incurred. Plaintiffs seek service awards of $2,000 each in recognition of the time, effort, and expense incurred pursuing claims that benefited the Settlement Class. *See* S.A., § 8.1.

## V.    LEGAL STANDARD

Plaintiffs bring this motion pursuant to Federal Rule of Civil Procedure Rule 23(e), under which a class action may not be settled without approval of the Court. In determining whether to finally approve a class action settlement, courts must first determine that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). This Court has considered and granted preliminary approval of class certification. ECF 55. For the same reasons described in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (ECF 52), this Court should certify the class for purposes of final approval of the settlement.

Next, for a settlement to be approved under Rule 23(e)(2), the Court must determine, after holding a hearing, that it is fair, adequate, and reasonable. In making this determination, the Court must consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed.R.Civ.P. 23(e)(2).

1   In addition to the Rule 23(e)(2) factors, courts in the Ninth Circuit look to nine

2   factors in making this determination: (1) the strength of the plaintiff's case; (2) the risk,

3   expense, complexity, and likely duration of further litigation; (3) the risk of maintaining

4   class action status throughout the trial; (4) the amount offered in settlement; (5) the extent

5   of discovery completed and the stage of the proceedings; (6) the experience and views of

6   counsel; (7) the presence of a governmental participant; (8) the reaction of the class

7   members to the proposed settlement; and (9) whether the settlement is a product of

8   collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935,

9   946 (9th Cir. 2011).

10  **VI.    ARGUMENT**

11          Federal courts strongly favor and encourage settlements, particularly in class

12  actions and other complex matters where the inherent costs, delays, and risks of continued

13  litigation might otherwise overwhelm any potential benefit the class could hope to obtain.

14  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the

15  "strong judicial policy that favors settlements, particularly where complex class action

16  litigation is concerned"); 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing

17  cases). Here, with a strong settlement that enjoys robust support from the Settlement

18  Class, and to which there is no opposition, the Court should grant final approval to this

19  settlement. The settlement satisfies all the Rule 23(e)(2) factors.

20          **A.    The Class Was Adequately Represented**

21          "[T]he adequacy requirement is met when: (1) the named plaintiff does not have

22  interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified,

23  experienced, and generally able to conduct the litigation." *Brown v. Transurban USA,*

24  *Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016) (citation omitted). Here, Settlement Class

25  Representatives have the same interests as all other Settlement Class Members as they are

26  asserting the same claims and share the same injuries. Further, the Court has already

27  recognized Class Counsel's experience and qualifications in appointing them to lead this

28  litigation and the record shows Class Counsel worked diligently to litigate and ultimately

bring this case to resolution. *See* ECF 55, Order Granting Preliminary Approval; *see also, In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

### B.    The Settlement was Negotiated at Arm's Length

The negotiations in this matter occurred at arm's length. See ECF 52-2, Counsel Decl. ¶ 13. Class Counsel and U-Haul's counsel are well-versed in handling data breach class actions such as this one and fully understand the values recovered in similar cases. *Id*. ¶¶ 45-46. Settlements negotiated by experienced counsel that result from arm's-length negotiations are presumed to be fair, adequate, and reasonable. *See Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 116 (2d Cir. 2005), *cert. denied, Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc.*, 544 U.S. 1044 (2005) (a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'") (quoting *Manual for Complex Litigation, Third* § 30.42 (1995)). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

The terms of the settlement were negotiated at arm's length and included a full day mediation under the direction of mediator Bennett G. Picker, Esq. The negotiations were vigorously contested, were overseen by Mr. Picker, and were non-collusive. *See G. F. v. Contra Costa Cnty.*, No. 13-cv-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotations and citations omitted); *see also Cohorst v. BRE Props.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011) ("[V]oluntary mediation before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness . . . . We put a good deal of stock in the product of arms-length, non-collusive, negotiated resolution.").

**C.    The Relief is Adequate**

The substantial cash relief offered to Class Members in the proposed Settlement is more than adequate under the factors outlined in Rule 23(e)(2)(C). Class Counsel, who have meaningful experience in leading major data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. The Court may rely upon such experienced counsel's judgment. *See, e.g., Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (citations omitted).

**1.    The Costs, Risk, and Delay of Trial and Appeal**

As outlined in the preliminary approval motion, Plaintiffs faced significant risks and costs should they have continued to litigate the case. First, there was a risk that Plaintiffs' claims would not have survived, or survived in full, on a class-wide basis after a motion for class certification, motions for summary judgment, and *Daubert* motions on damages methodologies, among other motions. Second, if Plaintiffs had prevailed on a motion for class certification, successfully defeated all the other objections and motions Defendant would have filed, and proceeded to trial, Plaintiffs still would have faced significant risk, cost, and delay including likely interlocutory and post-judgment appeals.

In contrast to the risk, cost, and delay posed by proceeding to trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class. It ensures that Settlement Class Members will receive guaranteed cash compensation now and provides Settlement Class Members with the protection of remedial measures. The substantial costs, risk, and delay of a trial and appeal support a finding that the proposed Settlement is adequate.

**2.    The Method of Distributing Relief is Effective**

The proposed distribution process will be efficient and effective. The available relief is detailed clearly in the Notice, which was provided to all Settlement Class Members laying out the benefits to which they are entitled, including benefits provided regardless of whether a Settlement Class Member files a claim.

Notifying Settlement Class of the available relief was efficient and effective. Notice included dissemination of individual notice by direct mail, in the form of the Short Form postcard notice. This direct mail and email notice reached 98.77% of the Class. Therefore, Settlement Class Members received effective and efficient notice of the relief offered. Because Settlement Class Members were able to make claims through a simple online form or by mail, the method of distributing the relief was both efficient and effective, and the proposed Settlement is adequate under this factor.

**3.      The Terms Relating to Attorneys' Fees Are Reasonable**

Class Counsel has requested, and neither U-Haul nor any Class Member has objected to, Class Counsel's request for $1,525,500 in attorneys' fees and $44,721.52 in reimbursement for costs and expenses. This request is on par with awards routinely granted by courts in the Ninth Circuit and is supported by a lodestar crosscheck, as laid out in the previously filed attorneys' fee motion. ECF 56.

**4.      Any Agreement Required to be Identified Under Rule 23(e)(3)**

Apart from the Settlement Agreement, there are no additional agreements between the Parties or with others made in connection with the Settlement. Accordingly, this factor weighs in favor of final approval of the Settlement.

**D.      The Proposed Settlement Treats Class Members Equitably**

The Settlement Class Members are treated equitably because they all have similar claims arising from the same data breach, and they all are treated the same under the Settlement. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members are eligible to claim the pro rata cash payments.

**E.      There is No Opposition to the Settlement**

In assessing adequacy, the Court should consider the degree of opposition to the Settlement. After a far-reaching, extensive direct notice campaign, no Settlement Class Members submitted an objection.

1    **F.      The *Bluetooth* Factors Are Similarly Satisfied.**

2              **1.      The Strength of Plaintiffs' Case**

3              Plaintiffs believe they have built a strong case for liability. Plaintiffs believe their

4    claims are viable and that they have a good chance of proving that U-Haul's data security

5    was inadequate and that, if they establish that central fact, Defendant is likely to be found

6    liable for violation of the CCPA as Plaintiffs pled in their Second Amended Consolidated

7    Complaint. While Plaintiffs believe they have strong claims and would be able to prevail,

8    their success is not guaranteed. It is "plainly reasonable for the parties at this stage to agree

9    that the actual recovery realized and risks avoided here outweigh the opportunity to pursue

10   potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, No.

11   09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with

12   most class actions, there was risk to both sides in continuing towards trial. The settlement

13   avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, No. 5:15-cv-01437-

14   ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the heavy obstacles

15   and inherent risks Plaintiffs face with respect to the novel claims in data breach class

16   actions, including class certification, summary judgment, and trial, the substantial benefits

17   the Settlement provides favors preliminary approval of the Settlement. Counsel Decl., ¶

18   27.

19             **2.      The Risk, Expense, Complexity, and Likely Duration of Further**
20                      **Litigation**

21             While Plaintiffs believe their case is strong, all litigation, including this one, is

22   subject to substantial risk. This case involves a proposed class of approximately 2,458

23   Settlement Class Members whose Private Information was involved in the 2022 Data

24   Incident and the 2023 Data Incident, 248,078 Settlement Class Members whose Private

25   Information was involved in the 2022 Data Incident, and roughly 13,889 Settlement Class

26   Members whose Private Information was included in the 2023 Data Incident. Each of these

27   approximately 260,000 Class Members would need to establish cognizable harm and

28   causation, and a complicated and technical factual background. As this Court is aware,

1  Defendant has already successfully moved to dismiss the bulk of Plaintiffs' claims, which

2  further demonstrates the very real litigation risks attendant here.

3          Although nearly all class actions involve a high level of risk, expense, and
4          complexity—undergirding the strong judicial policy favoring amicable
           resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir.
5          1998)—this is an especially complex class in an especially risky arena. As
           one federal district court recently observed in finally approving a settlement
6          with similar class relief: Data breach litigation is evolving; there is no
7          guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*.,
           No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16,
8          2019) ("Data breach cases ... are particularly risky, expensive, and
9          complex.").

10  *Fox v. Iowa Health Sys*., No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis.

11  Mar. 4, 2021). Data breach cases face substantial hurdles in surviving even the pleading

12  stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp*., No. 08 Civ. 6060 (RMB)

13  (RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases

14  of similar notoriety and implicating data far more sensitive than at issue here have been

15  found wanting at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach*

16  *Litig*., 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual

17  allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*,

18  928 F.3d 42 (D.C. Cir. 2019) (holding that plaintiff had standing to bring a data breach

19  lawsuit).

20          To the extent the law has gradually accepted this relatively new type of litigation,

21  the path to a class-wide monetary judgment remains unforged, particularly in the area of

22  damages. For now, data breach cases are among the riskiest and most uncertain of all class

23  action litigation, making settlement the more prudent course when a reasonable one can be

24  reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain

25  untested in a disputed class certification setting and unproven in front of a jury. And as in

26  any data breach case, establishing causation on a class-wide basis is rife with uncertainty.

27          Each risk, by itself, could impede the successful prosecution of these claims at trial

28  and in an eventual appeal—which would result in zero recovery to the class. "Regardless

of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). Thus, this factor favors final approval.

### 3.    The Risk of Maintaining Class Action Status Through Trial

Plaintiffs' case is still in the early stages of litigation, and the Court has not certified any class treatment of this case. Absent settlement, Plaintiffs would encounter risks in obtaining and maintaining certification of the class. If the case proceeds, Defendant will certainly oppose certification. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014).

Class certification in consumer data breach cases has only occurred in a few cases. While certification of additional consumer data breach classes may follow, the dearth of precedent adds to the risks posed by continued litigation.

### 4.    The Amount Offered in Settlement

In light of the substantial risks and uncertainties presented by data security litigation generally and this litigation specifically (as evidenced by the motion practice in this case), the value of the Settlement (a $5,085,000 common fund, which equates to $19.56 per person) strongly favors approval. Comparable data breach settlements that were finally approved have recovered far lower per-person amounts. See ECF 52 at 18, n.2. The Settlement makes significant relief available to Settlement Class Members, in the form of cash payments, estimated to be at least $100 per Settlement Class Member.

Considering the difficulties and expenses Class Members would face to pursue individual claims, and the likelihood that they might be unaware of their claims, this Settlement Amount is appropriate. *See id.* Accordingly, this factor favors approval.

### 5.    The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Here, Plaintiffs vigorously and aggressively gathered all of the information that

was available regarding U-Haul and the Data Incidents—including publicly-available documents concerning announcements of the Data Incidents and notice of the Data Incidents to its customers. Counsel Decl., ¶ 10. The parties also informally exchanged non-public information concerning the Data Incidents and the size of the Class in preparation for mediation. *Id*. Throughout the pendency of this litigation and the settlement negotiations, the Parties exchanged informal discovery to the point where "the parties have sufficient information to make an informed decision about settlement," including an informed and realistic assessment of the strengths and weakness of their respective cases. *See Linney*, 151 F.3d at 1239.

### 6.    The Experience and Views of Counsel

Class Counsel initiated this lawsuit when U-Haul announced the 2022 Data Incident, which, based upon publicly-available information, potentially impacted approximately 248,000 customers. Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Counsel Decl., ¶¶ 3-5 & Ex. A thereto. Having worked on behalf of the putative class since the Data Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully endorse the Settlement. *Id*., ¶¶ 26-27. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Norton v. Maximus, Inc.*, Civ. No. 1:14-0030 WBS, 2017 WL 1424636, at *6 (D. Idaho Apr. 17, 2017); *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528. Thus, this factor supports approval.

### 7.    Governmental Participants

There is no governmental participant in this matter. However, CAFA notice was timely provided to all states' attorneys general, and there was no response. *See* Passarella Decl., ¶ 4.

1

2

**8.      The Positive Reaction of the Class Members Favors Final Approval**

3

The reaction of the Settlement Class to this Settlement is overwhelmingly positive.

4

Out of a total of roughly 260,348 to whom notice was mailed or emailed, only one (1) Class

5

Member requested exclusion and there were no objections. *See* Passarella Decl. ¶ 19. As

6

of October 3, 2024, the administrator received 8,472 Claim Forms (5,041 online and 3,431

7

paper). *Id*. at ¶ 16.

8

The deadline to object or opt out of the settlement was September 12, 2024. Notably,

9

the Claims Administrator did not receive any objection and only one individual opted-out.

10

Passarella Decl., ¶ 19. "It is established that the absence of a large number of objections to

11

a proposed class action settlement raises a strong presumption that the terms of a proposed

12

class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop.*,

13

221 F.R.D. at 529; 4 Newberg on Class Actions § 11.48 (4th ed. 2002) ("Courts have taken

14

the position that one indication of the fairness of a settlement is the lack of or small number

15

of objections [citations omitted]"). The fact that no Settlement Class Members objected

16

indicates overwhelming support for the settlement and strongly favors approval.

17

**9.   Lack of Collusion Among the Parties**

18

The Parties negotiated a substantial Settlement, as described above. Class Counsel

19

and U-Haul's counsel are well-versed in handling data-related class actions such as this

20

one and fully understand the values recovered in similar cases. The assistance of a

21

respected third-party mediator also is evidence of no collusion. Therefore, the Court can

22

be assured that the negotiations were not collusive. *See G. F. v. Contra Costa Cnty.*, No.

23

13-cv-03667-MEJ, 2015 WL 7571789, at *11 (N.D. Cal. Nov. 25, 2015) (working with

24

neutral mediators is "a factor weighing in favor of a finding of non-collusiveness") (internal

25

quotation marks and citation omitted).

26

**VII.   NOTICE WAS PROVIDED ACCORDING TO THE PRELIMINARY APPROVAL ORDER AND SATISFIED DUE PROCESS AND RULE 23.**

27

28

To satisfy due process, notice to class members must be the best practicable, and

reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic mail or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the direct mail Postcard Notice is the gold standard, and is consistent with Notice programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc*., Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves and/or enter an appearance through an attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *See Espinosa v. United Student Aid Funds, Inc*., 553 F.3d 1193, 1202 (9th Cir. 2008), *aff'd*, 559 U.S. 260 (2010) ("The standard for what amounts to constitutionally adequate notice, however, is fairly low; it's 'notice reasonably calculated, under all the circumstances, to apprise interested

1  parties of the pendency of the action and afford them an opportunity to present their

2  objection.'")

3       As outlined in detail in the supporting declaration of the Settlement Administrator,

4  the Notice Plan here, and its execution, satisfied all the requirements of Rule 23(c). On July

5  12, 2024, Kroll caused 35,814 Short Form Notices to be mailed via first-class mail and

6  224,534 to be emailed. Passarella Decl. ¶ 14. Robust efforts were made to determine

7  forwarding addresses for returned mail, to re-mail notices to good addresses, and to send

8  U.S. Mail notices to those whose email notices "bounced." *Id*. at ¶¶ 9-13. After all re-

9  mailings, Kroll has reason to believe that notice likely reached 257,141 of the 260,348

10 persons to whom notice was emailed or the Short Form Notice was mailed, which equates

11 to a reach rate of the direct mail notice of approximately 98.77%. *Id*. at ¶ 14. This reach

12 rate is consistent with other court-approved, best-practicable notice programs and Federal

13 Judicial Center Guidelines, which state that a notice plan that reaches over 70% of targeted

14 class members is considered a high percentage and the "norm" of a notice campaign. *Id*.

15      Also, the dedicated Settlement Website, www.uhauldatasettlement.com, "went

16 live" on July 16, 2024. Passarella Decl. ¶ 5. Kroll established a toll-free telephone number

17 for Settlement Class Members to call and obtain additional information about the

18 Settlement through an Interactive Voice Response ("IVR") system. *Id*. at ¶ 6. As of October

19 3, 2024, the IVR system has received 493 calls. *Id*. Kroll designated a post office box with

20 the mailing address *Anderson et al. v. U-Haul International Incorporated*, c/o Kroll

21 Settlement Administration, PO Box 5324, New York, NY 10150-5324, in order to receive

22 Opt-Outs, Claim Forms, and correspondence from Settlement Class Members. *Id*. at ¶ 7.

23 Notice here was robust, effective, and met all due process requirements, as well as the

24 requirements of Rule 23(c). This weighs in favor of final approval as well.

**VIII.  CONCLUSION**

26      Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that

27 guarantees Settlement Class Members the opportunity to claim significant benefits. An

28 assessment of the *Bluetooth* factors weighs in favor of Final Approval. For the reasons

15

discussed above, and for those described in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 52) and Plaintiffs' Amended Motion for Attorneys' Fees, Expenses, and Service Awards (ECF 56), Plaintiffs respectfully request this Court enter the proposed Final Approval Order filed with the Motion for Final Approval, finally certify the Settlement Class and appoint Settlement Class Counsel and Plaintiffs as representatives for the Class, award each Class Representatives $2,000 service awards, grant Settlement Class Counsel attorneys' fees of $1,525,500 and expenses of $44,721.52  and grant final approval of this Settlement. A proposed Final Approval Order is attached as **Exhibit 2**.

Date: October 9, 2024                    Respectfully submitted,


                                        */s/ Terence R. Coates*
                                        Terence R. Coates (admitted *pro hac vice*)
                                        **MARKOVITS, STOCK & DEMARCO, LLC**
                                        119 East Court Street, Suite 530
                                        Cincinnati, Ohio 45202
                                        Telephone: (513) 651-3700
                                        Facsimile: (513) 665-0219
                                        *tcoates@msdlegal.com*

                                        *Class Counsel for Plaintiffs
                                        and the Settlement Class*

                                        Cristina Perez Hesano (#027023)
                                        *cperez@perezlawgroup.com*
                                        **PEREZ LAW GROUP, PLLC**
                                        7508 N. 59th Avenue
                                        Glendale, AZ 85301
                                        Telephone: (602) 730-7100
                                        Facsimile: (623) 235-6173

                                        *Attorney for Plaintiffs and the
                                        Settlement Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTICATE OF SERVICE</u>**

I hereby certify that on this 9th day of October, 2024, I served the foregoing upon all parties by filing it with the Court's electronic-filing system in accordance with Fed. R. Civ. P. 5(b)(2)(E)..

*/s/ Terence. R. Coates*
Terence R. Coates (admitted *pro hac vice*)
